IRA PROCTOR, RESPONDENT, v. GEORGE JENNINGS, APPELLANT.

WATER RIGHTS—OBSTRUCTIONS HARMLESS WHEN ERECTED.    A dam erected on a stream in a manner in no wise injurious or prejudicial at the time of its erection to a mill above, but which, by reason of circumstances that could not have been anticipated happening subsequently and operating in connection with it, causes the water to flow back upon the mill, is not such an obstruction as to authorize its abatement or justify a recovery of damages against the person building it.

RIGHTS OF SUBSEQUENT APPROPRIATORS OF WATER.    A person appropriating a water right on a stream already partly appropriated acquires a right to the surplus or residuum he appropriates; and those who acquired prior rights, whether above or below him on the stream, can in no way change or extend their use of water to his prejudice, but are limited to the rights enjoyed by them when he secured his.

FORTUITOUS INJURIES TO WATER RIGHTS.    Where a dam was erected on a stream below another's mill, and so as not at the time to interfere with it, but subsequently, on account of a new process of mining going into operation on the stream above, extraordinary quantities of sediment were deposited so as with the dam to interfere with the mill above: Held, that as the injuries resulting to the mill were not occasioned immediately by the dam, but by unforeseen and fortuitous circumstances happening afterward, though acting in connection with it, the owner of the dam was not responsible.

APPEAL from the District Court of the First Judicial District, Storey County.

The facts are fully stated in the opinion.

*Hillyer, Wood & Deal,* for Appellant.

I.   The defendant so using the water after it had passed plaintiff's mill as not to interfere with plaintiff's rights, became as to that use the prior appropriator, and the rights of the parties could not be

changed by any subsequent act of plaintiff, or any other person. (*Cary* v. *Daniels*, 8 Met. [Mass.] 478 ; *McKenney* v. *Smith*, 21 Cal. 374.)

II. Defendant has made no change in the extent of his appropriation, nor in the mode of using the water. The rights of the plaintiff and defendant to the use of the water were fixed when defendant made his appropriation. (*Ophir S. M. Co.* v. *Carpenter*, 4 Nev. 534; *Lobdell* v. *Simpson*, 2 Nev. 276; *Ortman* v. *Dixon*, 13 Cal. 481.)

III. Although the Court cannot decide in this case as between the miners spoken of in the findings and plaintiff, it will not hold defendant responsible for injuries done to plaintiff by the acts of those miners.

*Henry K. Mitchell*, for Respondent.

I. The rights of plaintiff extended not only to the unobstructed use of his wheel, but also to have the channel of the stream remain in the same condition it was in at the time of the construction of defendant's dam. If the construction of the dam in any manner raised the level of the bed of the stream, or in any manner interfered with or changed the flow of the stream at the time of its construction, it was an infringement upon plaintiff's rights, for which he is entitled to relief. (*McAlmont* v. *Whittaker*, 3 Rawle, 84 ; *Hill* v. *Ward*, 2 Gil. [Ill.] 285 ; Angell on Water Courses, 5th ed., Secs. 340, *et seq.*; *Bell* v. *McClintock*, 9 Watts, 119; *Lehigh Bridge Co.* v. *Lehigh Nav. Co.*, 4 Rawle, 9.)

II. In the absence of a finding determining whether the rights of the miners above are prior or subsequent to plaintiff, or prior or subsequent to defendant, it is to be presumed that those persons exercised their legal rights, and did not transcend them.

III. The debris and sediment flowing down the natural stream passes by the wheel of plaintiff without retarding or impeding its revolutions, and over the land of plaintiff until its further flow is prevented by the dam of defendant, which causes the obstruction

and injury.   The dam is the proximate cause of the. wrongs complained of.

IV.   The claim that the mode of working a mining claim as to subsequent appropriations shall be confined to the particular manner of working at the time of the subsequent appropriation is untenable.   Such a doctrine would have confined all mining pursuits in the early history of California to the rocker : a theory too narrow for justice, and dangerous in its results.   '

By the Court, LEWIS, C. J. :

1st.   " In the year 1865, the plaintiff constructed a water mill upon Six Mile Cañon, the motive power of the same being the water of the stream of said cañon, conducted therefrom by a ditch leading from a point above the mill to the said water wheel.   After passing over said wheel, the water fell into the channel of said stream and passed on down the same, there being sufficiént fall from the bottom of the wheel to the channel, and from there down sufficient grade to the channel, to enable the water leaving the wheel to pass off freely and without obstructing the working of the same. As to the defendant, the plaintiff was the prior appropriator of the water privilege to the extent above mentioned, and he has since done nothing by which he has lost any of the rights so acquired, or diminished their extent.

2d.   " Subsequently to the acquisition of plaintiff's rights, and in October, 1867, the defendant constructed a dam across the channel of said stream, at a point about 155 feet below the wheel of plaintiff, and below and east of the east line of plaintiff's land, together with a waste way, flume and ditch, for the purpose of furnishing water power for certain works of defendant below.   At the time of constructing said dam, the defendant was fully apprised of the prior rights of plaintiff, and was expressly notified by him not to obstruct the same in any manner to interfere with those rights.

3d.   " The effect of the construction of defendant's dam was to cause the sediment coming down said stream to gather above the dam to the level of the bottom of the ditch leading from the same, and to cause the water of the stream to set back towards plaintiff's wheel, upon the same level, and thus diminish very materially

the grade of the channel below said wheel. But at the time of its construction it did not so back the water or sediment, or diminish the grade as to prevent the free flow of the water from plaintiff's wheel, and did not at all interfere with the working of the same.

4th. "The dam so constructed by defendant has not since been altered in height, and there has been no alteration of the level or altitude of the flume and ditch leading from the same. During the latter part of the year 1867, the whole of the year 1868, and up the '— day of June, 1869, the works of defendant below did not in any manner obstruct or interfere with the free flow of the water from plaintiff's wheel, which was in use during all said period, or in any manner obstruct or interfere with the working of said wheel; and had the waters of said stream continued to flow down to the said works of plaintiff and defendant in their natural state and condition in which they did run and flow down to the same at the time of defendant's appropriation, and during the period aforesaid up to the — day of June, 1869, the said works of defendant would not materially have interfered with the workings of plaintiff's wheel, or the free flow of the water therefrom.

5th. "About the — day of June, 1869, certain parties who were in the possession of mining claims along the channel of said stream above the works of both plaintiff and defendant, adopted a new mode of working their claims and of using the waters of the stream in the working thereof. They had theretofore so used the waters as to permit the same to flow down naturally and regularly, and the change consisted in penning the water up for longer or shorter periods in reservoirs constructed for that purpose, and then permitting the same to escape suddenly and in large quantities, and pass down the stream with a flood. The effect of this was to carry down by the power of the floods of water so discharged, large amounts of tailings and sediment collected in said reservoirs and lying in the channel of said stream to the works of defendant, and thereby fill up his dam above the ordinary level of discharge, and to cause the same to accumulate in masses above said works as far back as the wheel of plaintiff, and to cause the back water and sediment to obstruct the free flow of water from the wheel of plaintiff, and prevent the regular and efficient working thereof.

6th.  " Had it not been for the acts above mentioned, the works of defendant would not have materially interfered with the working of plaintiff's wheel ; and on the other hand, had it not been for the works of the defendant the acts of said miners would have done no injury to the plaintiff; and the grade of the channel below said wheel, if left in the condition in which it was prior to the construction of defendant's dam and ditch, would have been sufficient to discharge freely all the water and sediment coming down said stream, notwithstanding the irregular flow thereof."

Upon these facts found by the Court below, a decree was rendered enjoining the defendant from continuing his dam at such a height as in any manner to interfere with or retard the revolutions or workings of the plaintiff's water-wheel attached to the mill and buildings mentioned in the complaint.   The defendant appeals.

But one question is presented by the record, or need be considered by the Court, namely :   Can a dam erected on a stream in a manner in no wise injurious or prejudicial at the time of its erection to a mill owner above, but which by reason of circumstances happening subsequently, and which could not have been anticipated at the time, operating in connection with it, and so causing the water to flow back upon the mill above, be held such obstruction as to authorize its abatement, or justify a recovery of damages against the person so building the dam for injury thus occasioned?   We think not.   Priority of appropriation, where no other title exists, undoubtedly gives the better right.   And the rights of all subsequent appropriators are subject to his who is first in time,   But others coming on the stream subsequently may appropriate and acquire a right to the surplus or residuum, so the rights of each successive person appropriating water from a stream are subordinate to all those previously acquired, and the rights of each are to be determined by the condition of things at the time he makes his appropriation.   So far is this rule carried that those who were prior to him can in no way change or extend their use to his prejudice, but are limited to the rights enjoyed by them when he secured his. Nor has any one the right to do anything which will in the natural or probable course of things curtail or interfere with the prior acquired rights of those either above or below him on the same stream.

The subsequent appropriator only acquires what has not been secured by those prior to him in time. But what he does thus secure is as absolute and perfect and free from any right of others to interfere with it, as the rights of those before him are secure from interference by him. Upon what principle, then, can it be held that he is responsible for injuries resulting to the prior appropriators, occasioned not immediately by his acts of appropriation, but by unforeseen and fortuitous circumstances happening after his appropriation, and acting in connection with the means employed by him to appropriate the surplus water?

Here the defendant had the undoubted right to make use of all the water flowing from the plaintiff's mill, and to build a dam or employ any other means of appropriation not prejudicial to the rights of the plaintiff. But at the time Jennings built his dam, it did not in any way interfere with the right of Proctor, nor is it claimed that in the ordinary course of things it would have done so, or that it could have been anticipated that the immediate cause of the injury would have occurred. Under such circumstances, the law we think does not hold the defendant liable, nor adjudge his dam such an obstruction or nuisance as may be abated.

*The Inhabitants of China* v. *Southwick et als.*, 3 Fairfield, 238, was an action on the case brought to recover damages for an injury done to the plaintiffs' bridge at the head of Twelve-Mile pond, raised as it was alleged by the defendants at the outlet of the pond. It appeared that the defendant built the dam at the point designated, and thereby raised a head of water, but not so high as to flow or injure the bridge of plaintiffs. Afterwards, however, by heavy rains and a violent storm of wind the waters were thrown upon the bridge, and it was destroyed. The Court held the defendant not liable, saying: "The jury found that the head of water raised by the defendants' dam was not, at the period complained of, high enough to flow the plaintiffs' bridge or do damage thereto. Its erection, then, was a lawful act, not in itself calculated to do any injury to the plaintiffs. Their loss was occasioned, as the jury have found, by great rains, or by the violence of the wind. If the dam had not raised the water to a certain height, the rain or the wind superadded might not have done the damage. It may

have been one, then, of a series of causes to which the injury may be indirectly ascribed. Their connection, however, was fortuitous, and resulted from an extraordinary and unusual state of things. Neither the rain nor the wind was caused by the dam. The bridge had continued unimpaired for a series of years, while the dam was higher than it was when the bridge was carried away. Such an event could not, therefore, have been reasonably calculated upon or foreseen. It would be carrying the doctrine of liability to a most unreasonable length to run up a succession of causes and hold each responsible for what followed, especially where the connection was casual and unexpected as it was here, and where that which is attempted to be charged was in itself innocent. The law gives no encouragement to speculations of this sort. It rejects them at once. Hence, the legal maxim: *Causa propinqua non remota spectatur*     *     *     If there had been no dam, the injury might not.have happened; but the defendant had the right to erect it, and that without being held answerable for remote and unforeseen causes."

Again, the same rule is thus laid down in *Bell* v. *McClintock*, 9 Watts, 119 : " When the plaintiff erected his dam, he was bound to notice not only its effects at the time, but its effects at all seasons as well. In this stream as well as all other large streams which fall into the Alleghany river, there are regular freshets or floods which swell the volume of water, and thereby enable the inhabitants to raft down the river the various products of the country. They are expected with considerable certainty at fixed times and seasons. It was the duty of the plaintiff with reference to this, which is at least of yearly occurrence, to calculate the immediate probable effects the dam would have at all seasons of the year on the property of his neighbors above as well as below his erection. A neglect to use the necessary precaution, or a miscalculation of its effects, where it works an injury to another, may be compensated in damages. *But where the injury arises from some cause out of the ordinary course, from some unusual cause,* as for instance, from a flood or freshet such as has been described by the witnesses, the owner of the dam is not liable to damages. It is *damnum absque injuria.* They are not such accidents as ordinary foresight or pru-

dence can guard against, and for this reason a distinction has been taken as to the liability of the party." (See also Angell on Water Courses, Sec. 347, *et seq.*)

By the rule adopted in these cases, which seems not only a correct but just one, it was incumbent on the defendant to so erect his dam that it would do no injury to the plaintiff, either under the then existing circumstances, or such as might be anticipated to happen in the future; but he was not required to go further, nor where he has used such precaution is he liable for injuries resulting from causes which could not be foreseen in conjunction with his dam. Such is the result of the rule when applied to this case.

That he could not have foreseen or anticipated the new mode of working the mines above himself and plaintiff is a self-evident proposition, if as found by the Court below it were in fact a new process.

The decree must be vacated. It is so ordered.          ✓