LAST CHANCE MIN. CO. *v.* BUNKER HILL & S. MINING & CONCENTRATING CO.

*(Circuit Court, D. Idaho.* February 29, 1892.)

WATER-RIGHTS—CHANGE OF PLACE OF USE.

The appropriator of water, to be used at a specified place for the purpose of operating machinery and other works, after so using and returning it to its original channel, cannot change the place of use, to the damage of a subsequent appropriator lower down on the stream.

*(Syllabus by the Court.)*

*W. B. Heyburn,* for plaintiff.
*McBride & Allen,* for defendant.

BEATTY, District Judge. This cause is submitted upon an agreed statement of facts, from which it appears that the defendant, during the months of February, April, and May, 1886, located three water-rights on Milo creek, in Shoshone county, Idaho, the water of which was conducted by separate ditches to defendant's ore milling plant, known as the "Old Concentrator;" that after being there used for the purpose of concentrating the ore from defendant's mine, and running the machinery connected with the mine and works, it was turned back into the natural channel of said creek; that it thereafter continued to flow therein unclaimed, until in the month of June, 1889, the plaintiff, at a point on said creek some distance below where defendant so returned it, located 2,000 inches thereof, and thereafter continued to use it for milling purposes in concentrating the ore from its mines, until July, 1891, when the defendant, at a point on one of its ditches above its mill, so constructed a flume as to carry all the water of said creek, during the season of low water, around and beyond the place of appropriation and diversion by plaintiff, and thereby prevented plaintiff from any use thereof; and that all such premises and water-rights are situated upon the public lands of the United States. Under such circumstances, can the defendant, as the prior appropriator, now so change the place of use of such water as to deprive the plaintiff thereof? is the question for determination.

With the first development of the Pacific coast by the American pioneer, water became an indispensable factor in mining, agricultural, and other material interests, and with its early use began the formulation of rules for its regulation. Those rules were by the courts and

legislatures first followed, then adopted as laws, and subsequently were ratified by congress by act of 1866. Among the first of such rules, which has ripened into law, was that favoring the prior actual appropriation made for some useful purpose. The use, however, was to be a reasonable one, and, as far as possible, be consistent with a use by others. Prior possession did not imply authority to take what was not needed, or, by prodigality, waste what others might profitably utilize. That such equitable rule might be enforced, it became necessary that some notice, or acts equivalent to notice, should be made of the claim. To this in time were added the positive requirements of a written notice, with full details of the amount, nature, and place of diversion and use. These general principles were, prior to the inception of the rights involved in this action, incorporated into the laws of this state, which, in pursuance of those of congress, must govern all water-rights located upon the public lands and streams of the general government. By section 3160, Rev. St. Idaho, it is provided that the appropriator of water must post "a notice in writing * * * stating therein" the amount claimed, "the purpose for which he claims it, and the place of intended use." This requirement is designed less for his protection than as a notification to others of what is left unclaimed which they may appropriate. It would follow that when an appropriation is made with full knowledge of prior rights, and in entire subordination thereto, it is as much entitled to protection against the aggressions of a prior claimant as the latter would be against subsequent intrusions. Also it is provided, by section 3156 of said statute, that "the appropriation must be for some useful or beneficial purpose, and when the appropriator ceases to use it for such purpose the right ceases." These sections together would seem to lead to the conclusion that, when an appropriator ceased to use the water at the place and for the purpose by him designated, he would be precluded from using it elsewhere or otherwise, and his rights concerning it would terminate. I think, however, a more liberal construction is justified, and, to render these rights of any permanent or material value, is demanded. The use for which the water is appropriated and to which it is applied is an important factor in the construction of the statute. The controlling question, in any case, is whether subsequent locators have had such notice of prior rights, and their extent and effect, as would guard them against making invalid locations.

In illustration, suppose some certain amount of water is appropriated to be used as a power by its conversion into steam; or, by combination with other elements, is to be converted into articles of merchandise; or to be used upon some certain tract of land for the purpose of irrigation. Should the appropriator be precluded from thereafter changing either or both,—its use, or the place thereof? The reply must be in the negative, for in all such cases the purpose of the appropriation is such that no subsequent appropriator can thereby be misled to his injury. Distinct notice is given in such cases, not only that so much water is drawn from the public supply, but that its appropriation is such that it cannot be used a second time. It is a notice that so much water is practically destroyed,

—is eliminated from existence as water. A subsequent locator has actual notice that this amount of water is withdrawn from all public claim, is absorbed, and has become a vested right. He cannot base any claim upon it, or upon any expectation that, some time in the future, it will become the subject of appropriation. Should such prior right be subsequently forfeited, he gains nothing thereby, as his rights are measured alone by what he could, and actually did, claim at the time of his appropriation. Neither does he lose anything, nor is he in any way damaged, should the first appropriator change his use, or the place thereof, for, in either event, he still has left all he ever claimed, or was entitled to claim. The appropriation of water for placer mining purposes, at some specified place, involves a somewhat similar principle. It is such an actual appropriation of a definite amount, and for such purpose, as, in the nature of things, must operate as a notice to all that its place of use must, from time to time, as the ground is worked, be changed. Should one use the water after it passes from the works of the prior claimant, he must do so at his own risk, and he cannot complain that changes are made which he had full notice would likely occur. In this action, however, the facts are quite different. In 1886 the defendant located the water, specifying that it was to be used at its mill for the purpose of power in operating machinery and in concentrating ores, and in pursuance of such notice conducted it to such mill, and, after there so using, returned it to the original channel of the stream from which it had been taken, and practically undiminished in quantity or deteriorated or changed in quality. The use made of it was purely usufructuary, and in no sense partaking of the nature of ownership in the water. The defendant, by its declarations and acts, in effect said to the world that the only use it had for the water was at the place and in the manner specified, and that, when so used, it had no further claim upon and abandoned it. Under such circumstances, there was neither direct nor implied notice that it would be used elsewhere or for other purposes by defendant. On the contrary, the public was justified in believing that defendant had made the only use thereof intended; that the same would continue; and that in the future it would be returned to the creek as it had been. Would it not follow, from such facts, that plaintiff, in claiming the water after its return to the creek, was fully justified? If justified in such claim, then protection thereof must follow. If the defendant's position is sustained by the law, it would follow that the prior appropriator would, in all cases, so absolutely control the water, to the extent of such appropriation, that no other person could thereafter attempt any permanent use of it, except at great risk of loss, even when such use would not damage the first appropriator. Suppose, in this case, the stream below defendant's mill were lined with ore-mills, all operated by the same water, as it passed from the wheels of one mill to the next below, and all by appropriations subsequent to defendant. Upon defendant's theory, all such mills may be closed, and utterly destroyed, whenever the latter concludes to modify its plans, and divert the water elsewhere. Such a

rule, I am firmly convinced, is counter to the policy of the law.   Instead of developing the country, it would block its progress.   Instead of utilizing, as generally as possible, nature's elements for the public good, it would subject them to the arbitrary will of any individual who might first assume a claim to them.   It would be an extension of the maxim, " first in time, first in right," far beyond the limits of equity or justice.   In this case the facts are not limited simply to the appropriation of the water, its use and return to the stream by defendant, but such *status* continued for over three years before plaintiff located, and thereafter continued for over two years to use it, without objection by defendant, and before the latter attempted, through the means stated, to interfere therewith.

Even if defendant's original claim of the water, its use and return to the stream, without any notice or reservation, direct or implied, of any other use, did not constitute a release of further claims, it certainly should be held that the continuation of such *status* for over five years must operate as an abandonment of any further or different claim than that exercised.   In view of all the facts, the doctrine urged by the defendant cannot be acceded to, unless it is sustained by most potent judicial authority.   From those cited, and from others, it appears, in *Maeris* v. *Bicknell*, 7 Cal. 261, that the court distinctly held that a prior appropriator could change the place of use as against a subsequent appropriator, but how this question was involved is not apparent; for the important question, as stated by the court,—and the only one shown by the facts,--was whether the plaintiff, who had cut a ditch for drainage, could, after defendants had cut another to appropriate the water, use the water as against defendants.   It was held he could not, because, prior to defendants' appropriation, he had neither used nor avowed any intentions to use it.   In *Davis* v. *Gale*, 32 Cal. 26, and *Correa* v. *Frietas*, 42 Cal. 342, the prior appropriation was for the purpose of working placer mining ground, and it was held that the place of use could be changed as against subsequent appropriators.   In *Woolman* v. *Garringer*, 1 Mont. 535, the defendants having located water to be conducted 27 miles for mining purposes, the plaintiffs, within three months thereafter, located the same, upon the theory that defendants had not made an actual use thereof, or conducted it from the stream, or given due notice of their intention to do so, prior to plaintiffs' appropriation.   The cases above cited were quoted and approved, and the court further added that—

"The notice posted on the stream, of the appropriation of so much water for general mining purposes, and the immediate entering upon the   *   *   * construction of the dam and ditch,   *   *   * were sufficient to put the plaintiffs on their guard,   *   *   * and to apprise them of   *   *   * defendants' superior rights.   The plaintiffs could acquire no other than a mere privilege or right to the use of the waste water, or, at most, but a secondary and subordinate right to that of the first appropriators, and only such as was liable to be determined by their action at any time, unless the water had been turned back into the original channel after it had been used, and answered

the purposes of the first appropriators, without any intention of recapture, and thereby became *publici juris.*"

In *Eddy* v. *Simpson*, 3 Cal. 249, the defendants, after using water for mining purposes, let it escape into plaintiffs' creek, and subsequently attempted to reclaim it, which it was held could not be done after plaintiffs began using it. In *Ortman* v. *Dixon*, 13 Cal. 36, the defendants first appropriated the water as a mill-power. Plaintiffs subsequently, by a ditch above the mill, used the water for mining purposes when the mill was not running. Still later defendants took out a ditch above plaintiffs, and conducted the water away for mining purposes. The court held defendants could not thus change its use; that—

- "The measure of the right, as to extent, follows the nature of the appropriation, or the use for which it is taken. If A. erects a mill on a running stream, this shows an appropriation of the water for the mill; but if he suffers a portion of the water, or the body of it, after running the mill, to go down its accustomed course, we do not see why persons below may not as well appropriate this residuum as he could appropriate the first use. It may be true, as * * * argued, that he may change the use, and even the place of using; but the concession does not help the argument, for the question is not how he may use his own, but what is his own."

In *Water Co.* v. *Powell*, 34 Cal. 109, the plaintiff having first constructed a dam to utilize the water it claimed, the defendants then took up some mining ground on the creek above such dam. The bed of the creek became so filled with *debris* from the mining operations of third parties that it was necessary for plaintiff to raise its dam to make any use of the water it had first appropriated, and this resulted in backing the water over defendants' mining ground. In holding that plaintiff could not so raise its dam, the court said:

"Its right to appropriate and use said water in the manner adopted, and to the extent of the appropriation, would not prevent other parties from acquiring rights in the surplus water, or in the bed and banks of the stream, or in the adjacent lands, to any extent which should not interfere with the rights before acquired. * * * When the right has once vested in the defendants, the plaintiff is no more justified, by extending its own claim, or changing the measure of appropriation, or interfering with the full enjoyment of the right vested in the defendants, than defendants would be in encroaching upon the prior rights of plaintiff."

In *Proctor* v. *Jennings*, 6 Nev. 87, it is held—

"That the rights of each [appropriator] are to be determined by the conditions of things at the time he makes his appropriation. So far is this rule carried that those who were prior to him can in no way change in extent their use to his prejudice, but are limited to the right enjoyed by them when he secured his."

It may be urged, as to some of the above noted cases, that they only determine that subsequent rights cannot be molested, and do not establish any rule by which it can be held, in this case, that plaintiff's appropriation was lawful. Certainly it must be conceded that, if it was unlawful, it cannot be protected, and defendant may do with the water what it will; but, without restating the facts, if under them the plaintiff

was not justified in making the claim it did, it would be difficult to imagine a case in which the water of a stream, once used as it was by defendant in this case, could ever be safely appropriated by a second party for any use whatever.

When defendant's water locations were made, section 3 of the act approved February 10, 1881, (11 Sess. Laws Idaho, 267,) was in force, as follows:

"The appropriator, or his or their successors in interest, may change the place of diversion, if the rights acquired by others are not thereby interfered with, and no injury to others therefrom result, and may also extend any ditch, canal, flume, pipe, or other conduit to points or places beyond such as may have been designated or first used, saving the rights which may have accrued prior to such extension."

The plaintiff claims that, as defendant's rights were acquired under this section, its rights now are so controlled, as against plaintiff, by the last clause, that no change of the place of use can be made. But long before plaintiff made its location this section was revised into section 3157, Rev. St. Idaho, as follows:

"The person entitled to the use may change the place of diversion, if others are not injured by such change, and may extend the ditch, flume, pipe, or aqueduct, by which the diversion is made, to places beyond that where the first use was made."

Whatever rights this revised section confers would accrue to defendant, and the defendant now relies upon this section in support of its right to make the change complained of. This position is fortified by the fact that the clause in the old statute prohibiting such change is omitted in the new. While it is evident that the legislature was simply aiming to exactly follow and adopt section 1412, Civil Code Cal., I think that it designed, by the statutory change, to permit the prior appropriator to change the place of use, as against a subsequent appropriator; but that it intended this to be done in all cases, regardless of the facts, is quite a different proposition. I still think it was designed that this extended liberty should include those cases, as above stated, in which the use of the water amounted to its absorption, or it was such as to imply notice to all that such change could be reasonably expected, and to exclude cases like the present, where it is appropriated and used for a specific purpose, and then abandoned. That the waters of the country may be monopolized by the few first comers, when they may be made to serve the many, would be an imputation of such improvident and inequitable legislation as should not be indulged, save upon overwhelming conviction. It must be concluded that plaintiff is entitled to protection for its water-right claim, its right thereto quieted, and defendant perpetually enjoined from interfering therewith, and it is now so ordered.