GASSERT, ADMINISTRATRIX, APPELLANT, *v.* NOYES ET AL., RESPONDENTS.

[Submitted March 23, 1896. Decided May 4, 1896.]

EVIDENCE—*Lost instrument.*—Evidence of the contents of a lost bill of sale or deed from the administrator of plaintiff's predecessor in interest was properly excluded where it did not appear that the grantor in the instrument was an administrator, or that he had authority to execute the paper.

WATER RIGHTS—*Abandonment—Non user.*—Mere lapse of time is not alone sufficient to establish abondonment of a water right through non-user. (*McCauley* v. *McKeig*, 8 Mont. 3S9, cited.)

SAME—*Abandonment—Evidence.*—Abandonment is a mixed question of intention and fact, and where the defendants, grantors of a ditch and water right had not used it for a period of three years, prior to conveying it, it is competent for them to testify as to their intention in not using it.

SAME—*Change of place of use by prior appropriator.*—A prior appropriator of water cannot change the place of use of his water so as to deprive a subsequent appropriator of his rights. and therefore, where, at the time of the junior appropriation, the prior appropriator was returning the water used by him to the stream above the point of diversion by the latter, he will not be permitted to afterwards change his place of use so as to return the water to the stream below such point,

*Appeal from Second Judicial District, Silver Bow County.*

ACTION to determine priority of water rights. The cause was tried before McHATTON, J. Defendants had judgment below. Reversed.

Statement of the case by the justice delivering the opinion.

This action was instituted by Harry Gassert, in his lifetime, to determine the right to the use of the waters of Brown's gulch and its tributaries, in Silver Bow county, between the parties to this suit. Since the appeal, Harry Gassert has died, and Sarah C. Gassert, administratrix of his estate, has been substituted as plaintiff.

The plaintiff claims the prior right to the use of 300 inches of the waters of said stream and its tributaries. It seems from the record that the ditch plaintiff claims was constructed in 1866; and the waters of the stream and its tributaries in controversy were appropriated and used by and through this ditch ever since by plaintiff, and others before him. In 1872, plaintiff first acquired possession of this ditch by purchase from Chris. Nissler, administrator of one Nurenberg. In 1875, the plaintiff, to perfect his title to the use of the water of said stream, appropriated 300 inches thereof, which he used in and by the ditch constructed in 1866, and which he had used since 1872.

The grantors of defendants constructed their ditch in 1868. This ditch taps Hail Columbia, Bull Run and Oro Fino Gulches, the principal tributaries of Brown's Gulch, and conveys the waters thereof onto a mining claim, known as the "Oro Fino Placer Ground," where it is used for mining purposes. The water, being used on the Oro Fino placer ground, was returned by way of Oro Fino Gulch to Brown's Gulch, above the head of plaintiff's ditch, and was afterwards used, or could be used, by him for irrigation purposes, through his ditch. In 1872, the reservoir on Hail Columbia Gulch, owned by defendants, broke. After that, the waters claimed by defendants' grantors and their ditch were not used for any purpose until 1876, when the defendants purchased the ditch and

water right, and commenced again to use the waters on the Oro Fino placer. In 1878, defendants extended their ditch so that they could use the water on placer ground near Rocker. The use of the water at this point prevented it from returning, after being used, to Brown's Gulch, as it did when used on Oro Fino placer. The plaintiff at once, it seems, notified the defendants that he claimed a prior right to 300 inches of the waters of Brown's Gulch and tributaries, and forbade their diverting it from Brown's Gulch so he could not use it. It appears that there was no scarcity of water for all parties until 1888, when the dry season made it necessary for plaintiff to assert his prior right to the use of the water, by instituting this suit.

The case was tried to a jury. The jury made a number of special findings of fact, that will be noticed, as far as necessary, in the opinion. A general verdict for the plaintiff was also found by the jury. On motion, the court set aside the findings of fact made by the jury, and the verdict, and made findings of its own, and, on its own findings, rendered judgment for the defendants. From the judgment and order refusing a new trial plaintiff appeals.

*Shropshire & Burleigh* and *Robinson & Stapleton*, for Appellant.

*Forbis & Forbis*, for Respondent.

PEMBERTON, C. J.—The action of the court in excluding the evidence of the contents of a lost bill of sale or deed from Chris. Nissler, as administrator of Nurenberg, to plaintiff, of the ditch called the ''Gassert Ditch,'' and claimed by plaintiff, is assigned as error. It did not appear that Nissler was administrator of Nurenberg, or, if he was, that he had any authority to execute the lost paper. We think there was no error in the action of the court.

The jury found that the grantors of the defendants abandoned their ditch and water right in 1873, by failing to use the same during the years 1873, 1874 and 1875. The court

set aside this finding, and made a finding of its own, that there was no such abandonment. This action of the court is assigned as error. There was no evidence of non-user of the water for any greater length of time than the three years named. Mere lapse of time is not alone sufficient to establish abandonment. (*McCauley* v. *McKeig*, 8 Mont. 389; *Partridge* v. *McKinney*, 10 Cal. 181; *Moon* v. *Rollins*, 36 Cal. 333; *Judson* v. *Malloy*, 40 Cal. 300; Black's Pom. Water Rights, page 184.)

Abandonment is a mixed question of intention and act. The grantors of defendants testified that they had no intention of abandoning their water right during the three years they did not use it. During that time one of the grantors purchased the interest of one of his co-owners in the ditch and water right. It was competent for these witnesses to testify as to their intention in this regard. (11 Am. & Eng. Ency. of Law, page 377, and authorities cited.) We think the court was justified in setting aside the finding of the jury, that the grantors of defendants had abandoned their ditch and water right in 1873, and making its own finding, that there was no such abandonment.

The jury found that the plaintiff had a right prior to that of the defendants to the use of 250 inches of the water in controversy. The court set aside this finding, and found that the right of the defendants to the use of 300 inches of the water was prior to that of plaintiff. The court found that plaintiff's appropriation was made in 1875, and that the grantors of defendants made their appropriation in 1868. From 1868 to 1878 the defendants and their grantors had used the water appropriated by them in mining on placer ground in Oro Fino Gulch. After the water had been thus used, it was permitted by the defendants and their grantors to return by way of Oro Fino Gulch to Brown's Gulch, at a point above the plaintiff's ditch, so that plaintiff could use it through his ditch in irrigating his lands. In 1878 the defendants extended their ditch from the point on Oro Fino Gulch, where their water had been used for ten years, to a point near Rocker, on the other side of the ridge or hill between Silver Bow Creek and

Brown's Gulch.   It is conceded that by extending the ditch through the ridge or hill between Brown's Gulch and Silver Bow Creek, to the point near Rocker, and thereby conveying the water to that point, it became impossible for it to be returned to Brown's Gulch, but that it escaped into Silver Bow Creek after being used near Rocker.   Thus, it appears that by extending their ditch and changing the place of the use of the water from the point where it was used when plaintiff made his appropriation, and long prior and subsequent thereto, the defendants absolutely deprived the plaintiff of the right to use the water in controversy at all.

The question then is, had the defendants the right to so change the place of the use of the water in controversy as to deprive the plaintiff entirely of the use thereof?   Upon this point the court instructed the jury as follows:   "The owner of the water right has the right to change the point of diversion, or the place or manner or use of the water, as he or they may see fit and proper provided the rights of other appropriators are not interfered with by such change; and in this case you are instructed that if the defendants were the owners of the waters of the tributaries of Brown's Gulch, and were using the same upon their placer grounds, that they might change the place of use, so that the water, instead of flowing into Brown's Gulch, would flow into Silver Bow Creek."   The giving of this instruction is assigned as error.

In *Water Co.* v. *Powell*, 34 Cal. 109, a case involving the question under consideration, Mr. Justice Sawyer says:   "But suppose the plaintiff appropriated the waters, and constructed its ditch and dam amply sufficient, under the condition of the stream and the country as it then existed, to make it available, and acquired a right to appropriate and use said water in the manner adopted, and to the extent of the appropriation, this would not prevent other parties from acquiring rights in the surplus water, or in the bed and banks of the stream, or in the adjacent lands, to any extent which should not interfere with the rights before acquired.   And, when the rights of the subsequent appropriators once attach, the prior appropriator can-

not encroach upon them by extending his rights beyond the first appropriation. In this case the plaintiff appropriated the waters of Sandy Creek; constructed its ditch and dam for the purpose of conveying it away for the uses contemplated; and the mode of use, so far as anything to the contrary appears by the testimony, was sufficient, in the then condition of the stream, to enable the plaintiff to enjoy the waters in the most advantageous manner. It does not appear that plaintiff acquired any rights or made any claim beyond this. If plaintiff's right was thus limited to the extent and mode of the actual appropriation,—and from the mere fact of appropriation and enjoyment to a certain extent, and in a particular manner, no presumption of law arises that the right is more extensive than is indicated by the actual appropriation and mode of enjoyment,—then the defendants had a right to take up the mining claims on the stream above, and work them in any manner which would not encroach upon the rights of the plaintiff, as they were actually vested and enjoyed at the time of locating such mining claims. To that extent, they themselves would be the first appropriators, and, being first in time, would be first in right. * * * The legal presumption from these facts alone would rather be that the right was no more extensive than the present enjoyment. The limitation of plaintiff's right to its actual enjoyment at the time being assumed, the defendants were authorized to take up mining claims on the stream above, and hold and work them in the condition in which they found them, so far as they could do so without injury to the plaintiff's prior rights; and, after their rights became vested, the plaintiff could not rightfully construct a dam at a point further up the stream, and thereby flood the defendants' claims, which were not affected by the full enjoyment of the water rights of the plaintiff, as they existed at the time of the location of said claims; nor could the same results lawfully be accomplished by erecting a dam of much greater height than the old one at the point where it was before located. The latter mode of encroachment is as clearly illegal and wrongful as the former. * * * Un-

doubtedly, when plaintiff took up the water, and before other conflicting interests had vested, the right to the water carried with it the right to construct such works as were necessary to the full enjoyment of the water. But when it established its works, and fully appropriated the water by means sufficient for the purpose, and used it for a term of years in a particular mode, unless there was something manifesting a more extended right, other parties had a right to suppose that the plaintiff had itself defined the limits of its rights, and act accordingly.''

In *Proctor* v. *Jennings*, 6 Nev. 83, a similar case, the court says: ''Priority of appropriation, where no other title exists, undoubtedly gives the better right. And the rights of all subsequent appropriators are subject to his who is first in time. But others coming on the stream subsequently may appropriate and acquire a right to the surplus or residuum. So the rights of each successive person appropriating water from a stream are subordinate to those previously acquired, and the rights of each are to be determined by the condition of things at the time he makes his appropriation. So far is this rule carried that those who were prior to him can in no way change or extend their use to his prejudice, but are limited to the rights enjoyed by them when he secured his. Nor has any one the right to do anything which will, in the natural or probable course of things, curtail or interfere with the prior-acquired rights of those either above or below him on the same stream. The subsequent appropriator only acquires what has not been secured by those prior to him in time. But what he does thus secure is as absolute and perfect and free from any right of others to interfere with it as the rights of those before him are secure from interference by him.'' (*Ortman* v. *Dixon*, 13 Cal. 34; *Eddy* v. *Simpson*, 3 Cal. 349.)

In *Last Chance Min. Co.* v. *Bunker Hill & S. Mining & Concentrating Co.*, 49 Fed. 430, after collating and discussing the cases and authorities bearing upon the question here involved, the court holds that ''the appropriator of water to be used at a specified place, for the purpose of operating machin-

ery and other works, after so using and returning to its orig-
inal channel, cannot change the place of use to the damage of
a subsequent appropriator lower down on the stream.''

In *Creek* v. *Waterworks Co.*, 15 Mont. 121, this court held
an appropriator of water could change the use of his appro-
priation. But in that case we also held that the first appro-
priator could not so change the use as to deprive subsequent
appropriators of rights acquired by them.

The facts of the case at bar, we think, bring it squarely
within the rule announced in the authorities quoted and cited
above. It will not be disputed, we think, that a prior appro-
priator of water cannot so change the use of the water as to
deprive the subsequent appropriator of his rights. If the
prior appropriator cannot encroach upon the rights of the sub-
sequent appropriator by changing the use, we think, for the
the same reasons, he cannot do so by changing the place of the
use. This view, we think, is in accordance with the authori-
ties, as well as reason and justice.

We think the instruction complained of is in direct conflict
with the authorities and views herein expressed. We are
therefore clearly of the opinion that the instruction is errone-
ous. The instruction is certainly in conflict with the spirit,
reason, and holding of *Creek* v. *Waterworks Co.*, *supra*. To
hold that the prior appropriator of water has the unrestricted
right to so change the use, or the place of use, of water appro-
priated by him, as to wholly deprive subsequent appropriators
of their right, is to subject the important question of water
rights and irrigation in this state to the baleful influence of
monopoly, which appears to us dangerous to private rights,
and inimical to public policy.

The judgment and order appealed from are reversed, and
the cause remanded for new trial.

*Reversed.*

HUNT, J., concurs.    DE WITT, J., not sitting.