CRUSE v. McCAULEY.

(Circuit Court, D. Montana. August 30, 1899.)

No. 502.

**1.** WATERS—EVIDENCE OF APPROPRIATION—CERTIFIED COPY OF RECORD.

The recording of a notice of the appropriation of water in the records of a county in Montana, at a time when there was no law authorizing such record, was of no force or validity, and a certified copy of such record is not admissible in evidence.

**2.** SAME—APPROPRIATION—WHAT CONSTITUTES.

The digging of a ditch not exceeding 30 feet in length, into which water from a stream was diverted, and returned to the stream at its foot, together with a notice posted of the appropriation of the water for irrigation of land half a mile distant, does not constitute an appropriation of the water, but is merely evidence of an intention to appropriate, which, to become effective, must be followed within a reasonable time by an actual appropriation to beneficial use.

**3.** SAME—TIME FOR CONSTRUCTION OF DITCH.

In the absence of a statute fixing the time within which a notice of intention to appropriate water from a stream for irrigation purposes must be followed by the commencement of work towards its actual appropriation, a delay of 10 months before laying out a ditch to convey water to land

96 F.—24

half a mile distant will be held unreasonable, unless extenuating circumstances are shown, and insufficient to entitle the appropriator to a prior right as against one who has meantime commenced the construction of a ditch, and continued the work with reasonable diligence.

4. SAME—DATE OF APPROPRIATION—EFFECT OF RECORDED NOTICE.

The date of the appropriation of water from a stream, given in the recorded notice, is not conclusive against the appropriator, and he may show that the actual appropriation was made at an earlier date, as against one whose appropriation was in fact later, but prior to the date stated in the notice.

5. SAME—RIPARIAN RIGHTS—SETTLER ON PUBLIC LANDS.

The riparian rights of the owner of land acquired by settlement and entry under the public land laws accrue, at latest, at the time of his application for entry, or the filing of his declaratory statement.

6. SAME—ACQUISITION AND EXTENT OF RIGHTS OF PATENTEE.

A patentee of public land over which a stream flows acquires all the rights in the waters of such stream possessed by the United States at the time the patent took effect, which is by relation the date of the application for entry, or the filing of the declaratory statement. Such rights include the right to the use of the waters for the irrigation of the land to a reasonable extent, which cannot be taken away by any state law or custom, except for public purposes. The patentee cannot, however, enjoin the appropriation of water from the stream by others under such state law, without showing that such appropriation will result in damage to him in the use and enjoyment of the land covered by the patent.

This was a suit to enjoin defendant from diverting the waters of a stream, and to recover damages for the previous diversion.

T. J. Walsh, for complainant.

H. S. Hepner, Cort & Worden, and Sanders & Sanders, for defendant.

KNOWLES, District Judge. The first point I will consider in this case is the objection made by plaintiff to the introduction of a certified copy of a notice of appropriation made by the defendant, McCauley, of the waters of the South Fork of McDonald creek. This certified copy is from the records of Meagher county, Mont. In 1882 there was no law in Montana authorizing the recording of a notice of appropriation of water. This record then had no force or validity. It imparted no notice, and was not a step in appropriation of said waters. The objection is therefore sustained. The notice posted at a point in said McDonald creek of defendant's intention of appropriating some 500 inches of the water of that creek was introduced in evidence, and will be considered by the court. This notice of appropriation was posted near a point where defendant afterwards diverted the waters of said creek, by means of a ditch, on the 2d day of July, 1882. At the time this notice was posted, the said McCauley dug a ditch from 15 to 30 feet long, and turned the waters of said creek into the same. The waters that passed into this ditch at its head were returned to the creek at its lower end. The defendant, with his friends, dug this short ditch in about one hour. One ax and a shovel were used in the work, those engaged therein taking turns. The place designated in the notice of appropriation, where the waters of said creek were to be used for irrigation, was some half a mile or more away from the place where the notice was posted. I do not think this notice of appropriation and this short ditch can be treated

as an appropriation of the waters of said creek. They were acts showing an intention to appropriate them. It is said by Kinney in his work on Irrigation (section 159):

"An appropriation of water cannot be constructive, but must be actual. It follows, therefore, that a notice of intention to appropriate the water of a specified stream is not, of itself, sufficient to constitute an appropriation thereof, although in connection with other acts it may be sufficient."

Again, in section 162:

"As we have seen, the appropriation notice cannot be constructive. So, also, no steps which it is necessary to take to make the appropriation complete can be constructive, as the whole theory of appropriation for beneficial uses is based merely upon a prior possessory right of the water, entirely separate from the property in the land over which it runs, and no possession or exclusive property can be acquired while it is still flowing and running in its natural channel or stream. It follows, therefore, that, in order to obtain possession of the water attempted to be appropriated, it is an indispensable requisite that there must be an actual diversion of the water from its natural channel into the appropriator's ditch, canal, reservoir, or other structure."

The defendant at the time this short ditch was dug had not marked out or surveyed any ditch which would convey said waters to the land upon which he expected to use the same. The taking of water out of a stream, and carrying it by means of a ditch some 20 or 30 feet, and then turning it back into the same creek, cannot be said to be an appropriation of the same for any beneficial purpose. If it should be, then, according to the case of Gassert v. Noyes, 18 Mont. 216, 44 Pac. 959, he could not divert the waters away from this creek to the prejudice of plaintiff, as plaintiff had dug his ditch and made his appropriation of water before the defendant had constructed his ditch and taken the water to the land upon which he intended to use the same. Plaintiff's grantor, Chamberlain, commenced his work of appropriating the waters of said creek some time in the early part of the spring of 1883, and before the time defendant had marked out the line of his ditch. The intention to appropriate the waters of said creek, manifested by the notice posted in July, 1882, and the digging of said short ditch, could not interfere with the actual appropriation of plaintiff, unless the doctrine of relation would apply, and connect defendant's after work with the said intention. When a party makes manifest his intention to appropriate water, he must follow up said intention within a reasonable time by making an actual appropriation of the same,—that is, by reducing the same to an actual possession. In this case did the defendant do this? The intention was manifested in July, 1882. The ditch through which this appropriation was to be made was not even marked out or surveyed or located until in April or May, 1883, about 10 months after the notice of intention.

In 1885 the legislative assembly of Montana passed a statute upon the subject of the appropriation of water, and it was therein provided:

"That within forty days after posting a notice of intention to appropriate water, the appropriator must proceed to prosecute the excavation or construct the work by which the water appropriated is to be diverted with reasonable diligence to completion."

See Montana Codes and Statutes (Civ. Code, § 1887).

While this statute did not exist in 1882, and would not be controlling upon the court in determining the question of reasonable diligence, yet it can be seen what the legislative authority of the territory of Montana considered should be the diligence to be exercised in such cases. In California and Idaho the statutes provide the work on the ditch must be commenced in 60 days after the posting of the notice. In Colorado the work of constructing the ditch for the appropriation of water must be commenced within 90 days from the date of posting the said notice. In Oregon it is provided after such notice that within 6 months the actual construction of the work for said purpose must be commenced. In Nevada the work of constructing such a ditch must be commenced within 30 days after making out a certificate describing the ditch to be constructed. A summary of these statutes will be found in Kinney on Irrigation. These statutes show what, in the states named, is considered due diligence in the commencing of work in the construction of a ditch, after notice of intention to appropriate water is given.

It is perhaps true that in considering what would be reasonable diligence in marking out the line of a proposed ditch, and commencing work on the same, a court would not be controlled by any arbitrary rule, but would consider the circumstances confronting an appropriator of water. A court should consider, however, that in a new country, subject to settlement, a proposed locator of water rights should not be guilty of any unnecessary delay in perfecting his appropriation. The rights of newcomers should be considered. In this case the only excuse offered by the defendant for not marking out the line of his proposed ditch and the commencement of the work on the same sooner than he did after the posting of his notice is that at the time and place where the proposed ditch was to be dug it was difficult to employ men for the work. He does not show, however, that he made any serious endeavor to employ such men. Chamberlain, one of the grantors of plaintiff, seems to have had no difficulty in employing men for this very kind of work in the spring of 1883. I do not think defendant has presented a case where it was held that reasonable diligence was shown, where there was the delay which occurred in this case.

In the case of Osgood v. Mining Co., 56 Cal. 571, a large amount of money had been expended in surveying and working upon the proposed ditch before the rights of the plaintiff in that case accrued. The ditch in that case, according to the first survey, was some 60 miles in length. In that case it was held that plaintiff's rights did not accrue until he obtained his patent. This was some years after the line of the ditch was marked out and commenced. I am constrained, therefore, to hold that defendant did not mark out the line of his ditch and commence work thereon within a reasonable time after he had posted his notice,—in other words, he did not pursue the work of appropriation with due diligence after the posting of his notice of appropriation. Before the defendant had commenced work on his ditch, in 1883, the grantor of plaintiff, Chamberlain, had commenced work on his ditch, and had pursued his work with reasonable diligence. The defendant not having pursued his work with proper

diligence, his subsequent work thereon would not relate back to the time of his notice, and cut off Chamberlain's rights.

It is more difficult to tell just how much water the said Chamberlain did appropriate. He claimed but 160 acres of land at the date when he made his appropriation, and the evidence shows that his land required about one inch to each acre thereof. Hence, I hold that defendant must allow sufficient water to run past the head gate of his ditch to allow 160 inches of water to reach plaintiff's land at all times, if there is that much water in the creek. The fact that some of the water which passes defendant's head gate sinks in the bed of the creek, makes no difference. I think the evidence shows that all of this water does not sink.

There is another point defendant makes that should receive some notice. Chamberlain, in his record of his water right in the county of Meagher, states that his appropriation was made in June, 1883. This was after defendant had marked out his ditch, and commenced work on the same. I hold, however, that this record would not prevent plaintiff from showing the true date of that appropriation. No fraud was perpetrated on defendant by that record, and no fraud would be worked upon defendant by controverting the same. Plaintiff would not be estopped then from showing the true date of Chamberlain's appropriation. Plaintiff, however, claims that he has the right to have the waters flow down to him as a riparian proprietor. Chamberlain, under whom plaintiff claims, filed his declaratory statement, making application to enter this 160-acre tract of land, on July 26, 1882. This was about 24 days after defendant had posted his notice of appropriation of the said waters of the South Fork of McDonald creek. As defendant, in my opinion, as above expressed, did not exercise reasonable diligence in marking out the line of his ditch, and in constructing the same, his right would not relate back to this notice, and hence plaintiff's rights as a riparian proprietor would be prior to those of defendant. There are decisions in California which hold that the rights of plaintiff would accrue only at the date of the patent to Chamberlain. This is not, however, the doctrine of the federal courts. Stark v. Starrs, 6 Wall. 402; Gibson v. Chouteau, 13 Wall. 101; Shepley v. Cowan, 91 U. S. 337. In this case the relation would certainly be to the date of filing the declaratory statement by Chamberlain. It is not necessary to discuss in this case whether or not the patent issued to Chamberlain would relate back to his settlement. Had the rights of defendant accrued before Chamberlain filed his declaratory statement, then this question would be presented.

It must be conceded that the United States, as the proprietor of the land over which the South Fork of McDonald creek flowed, had a right to the flow of the waters thereof over its land, as an incident thereto. In the eastern part of Montana, the United States acquired its title to lands by virtue of what is called the "Louisiana Purchase." There cannot be one rule as to the right to the flow of water over its lands in Montana, and another rule as to its lands in Iowa and Missouri. In these last-named states there can be no doubt of the rule that the national government would be entitled to water which

is an incident to its land. As the United States then owns the waters which are an incident to its lands, it can dispose of them separate from its lands if it chooses. Section 2339, Rev. St., provides:

"Whenever by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same."

The practical construction of this statute has been that, as long as land belonged to the United States, the waters flowing over the same was subject to appropriation for any of the purposes named, when such appropriation was recognized by the local customs, laws, or decisions of the courts. But if the water was not so appropriated when it flowed over the public domain, it was not subject to appropriation after the land over which it flowed became private property. Patents of the United States to lands contain this clause: "Subject to any vested and accrued water rights for mining, agricultural, manufacturing, or other purposes," etc. Certainly this means subject to such water rights as existed at the time when the patent took effect. I have said that in this case it would be at the date Chamberlain filed his declaratory statement. If a person receives a patent from the United States for land subject only to accrued water rights, —that is, existing water rights,—and as an incident to, or a part of, this land, there is water flowing over the same or upon the same, he would have all the rights the United States had at that time. I do not think any state law or custom can take away such rights, except for some public purpose. Under this view of the law, the plaintiff became a riparian proprietor in the waters of said McDonald creek. In the case of Mining Co. v. Ferris, 2 Sawy. 176, Fed. Cas. No. 14,371, the United States circuit court for the district of Nevada held that a riparian proprietor may lawfully divert the water of a stream for the purpose of irrigating his lands to a reasonable extent. In a case like this, I should think the defendant might divert the waters of McDonald creek for the irrigation of his land, provided he did not damage the plaintiff by so doing. Before the plaintiff could enjoin the defendant from diverting water from said creek, he must show that he is damaged by that act. The plaintiff has no right to claim, as against defendant, that the water of said creek should be allowed to flow down to his ranch, in order that he should be allowed to irrigate his land, taken as a desert land claim. The grantor of plaintiff, Chamberlain, did not file upon said land until in 1886. Before that time defendant had completed his appropriation of the waters of said creek, and the patent for said land was made subject to this water right.

The decree in this case will be that the defendant be enjoined from diverting any water from said South Fork of McDonald creek until plaintiff has at least, at the place where his ditch enters his land, 160 inches, miner's measurement, of the waters of said creek. This decree will be made subject to the provision that there is sufficient water in the said creek at defendant's dam to furnish this much water.

It is further found that by the diversion of the waters of said creek, in the year 1897, plaintiff was damaged by the defendant, McCauley, in the sum of $500, for which he is entitled to a judgment.