THE NEVADA WATER COMPANY *v.* HENRY POWELL, F. COFFEE, KERR PHELAN, *et al.*

APPROPRIATION OF WATER BY DAM AND DITCH.—Where the Court instructed the jury, in substance, that if plaintiff acquired the prior right to divert a portion of the water of Shady Creek, by means of a dam and ditch, and the dam and stream should at any subsequent time, by reason of mining by strangers above, become filled up to such an extent as to make it necessary to raise the dam higher than it originally was to enable the plaintiff to continue the diversion by means of said ditch, then the plaintiff is entitled to make additions to the height of the dam from time to time, as occasion requires, without limitation, and wholly irrespective of the effect of these additions upon the interests of other parties acquiring rights for mining and other purposes on the stream above, subsequent to said original appropriation of the waters of the stream : *held,* that the principle on which such instruction is founded is inadmissible and the instruction erroneous.

IDEM.— Where plaintiff appropriated a portion of the waters of a stream, and diverted it by means of a dam and ditch, sufficient for the purpose in the natural condition of the stream as it then existed, it does not necessarily follow that he thereby acquires the right to raise his dam higher and higher, as occasion might require, to obviate obstructions to its use in the manner of its said original appropriation, occasioned by physical changes in the condition of the stream not anticipated, whether arising from natural or artificial causes.

IDEM. — The question, what is the extent of the right originally acquired by plaintiff in such a case to which all subsequently acquired rights must be subordinate, is one of fact, for the jury.

IDEM.—If the plaintiff appropriated a portion of the waters of a stream, and constructed a ditch and dam, amply sufficient, under the conditions of the stream and the country as they then existed, to make the appropriation available, and thereby acquired the right to appropriate and use said portion of said waters in said manner only, this would not prevent or impair the right of other parties to acquire a right to the surplus waters of the stream, or to its bed and banks, or the adjacent land, to any extent that should not interfere with rights previously acquired. And when the rights of the subsequent appropriators once attach, the prior appropriator cannot encroach upon them, by extending his rights beyond the first appropriation.

IDEM.—In such a case, when the right has once vested in the subsequent appropriator, the prior appropriator would be no more justified in extending his claim, or changing the means of his appropriation, to the prejudice of the second appro-

priator, than the latter would be in encroaching upon the prior rights of the first. In such case, each appropriator is, in respect to the particular thing appropriated by him, prior in time and exclusive in his right.

IDEM.—Where the plaintiff, by means of a dam of a certain height and dimensions, constructed at a certain point on Shady Creek, and the excavation of a ditch extending therefrom, which at the time of their construction were well adapted to and ample for the purpose, appropriated a portion of the waters of said creek, whatever was thus left unappropriated, either of the waters of said creek or mining ground therein, was open to be appropriated by defendants; and if the defendants, by first appropriation, acquired the right to work their mining claims, located in the bed and banks of said stream above plaintiff's dam, in their condition at that time, the plaintiff was not authorized, by subsequently erecting a higher dam, to interfere with said right; and this, although by subsequent changes not wrought by defendants, occurring in the bed of the stream, it became impossible for plaintiff longer to divert the waters of the stream at the point chosen for its diversion, without so raising said dam.

IDEM.—When plaintiff appropriated the waters of Shady Creek, and before other conflicting interests had vested, the right to the water carried with it the right to construct such works as were necessary to the full enjoyment of the water. But when he established his works, and fully appropriated the water by means sufficient for the purpose, and used it for a term of years in a particular mode, then, unless there was something manifesting a more extended right, other parties had a right to suppose he had thereby defined the limits of his right, and act accordingly.

APPEAL from the District Court, Fourteenth Judicial District, Nevada County.

In the Court below the plaintiff had judgment. The defendants moved for a new trial, which was denied by the Court, and from the order denying said motion and the judgment the defendants appealed.

The following instructions were given by the Court to the jury, at plaintiff's request, to which the defendant at the time duly excepted, to wit:

" 1. If the jury believe, from the evidence, that the right of plaintiff to use and divert the waters of Shady Creek is prior in date to the rights of defendants to work the Wilder Claims, such prior right carries with it the right to construct such works as are absolutely necessary to the full enjoyment of the right.

" 2. If the plaintiff, or those under whom it claims title, located the Shady Creek Ditch, and diverted any portion of

the waters of Shady Creek therein, prior to the location of the Wilder Claims by the defendants, or those under whom they claim, and subsequently, by reason of obstructions caused by tailings coming down the stream from mining claims above, it became necessary for the plaintiff to raise their head dam to its present height, in order to divert the said water into their ditch, then the plaintiff had a right to so raise its head dam, notwithstanding any damage caused thereby to the Wilder Claims.

" 3. If the jury believe from the evidence that the Shady Creek Ditch of plaintiff was located, and any portion of the water of the stream diverted therein prior to the location of the Wilder Claims, and that the raising of the dam to its present height was rendered necessary for the purpose of diverting said water into their ditch, by reason of tailings coming down said stream from mining claims of other parties above said dam, then the jury should find for the plaintiff, and assess such damages as may have been proven.

" 5. A party cannot justify the cutting of a dam upon the ground that he was abating a nuisance, by showing that at some time prior to such cutting the dam caused him an injury, but he must show either that such dam was causing him an injury at the time when such cutting took place, or that, if allowed to remain, it would cause him an injury at some subsequent time."

The other facts are sufficiently stated in the opinion of the Court.

*D. Belden,* and *A. A. Sargent,* for Appellants.

The Court, in effect, instructed the jury that the prior appropriator of the waters of a stream could add to, enlarge, or extend the means by which his water was originally diverted, to the destruction of all subsequently acquired rights; and that, in fact, all other and subsequently acquired privileges were by sufferance of this primal right.

For a reversal of this ruling we rely upon the maxim *sic*

*utere tuo ut alienum non lædas.* By the ruling of the learned Judge, not only the maxim itself was abrogated, but a principle asserted subversive equally of individual rights and of the soundest doctrines of both law and equity. (*Bush* v. *Brainerd,* 1 Cowen, 78; *Hay* v. *The Cohoes Company,* 2 Comst. 161; *Ferrera* v. *Knipe,* 28 Cal. 344; *Hill* v. *Smith,* 27 Cal. 481; *Logan* v. *Driscoll,* 19 Cal. 626; *Kidd* v. *Laird,* 15 Cal. 161; *Farrand* v. *Marshall,* 17 Barb. 385.)

In no class of cases has this rule been more frequently applied than where, as in the case at bar, a riparian proprietor, by change in the use of his water right, affects injuriously his neighbor's property. (Angell on Watercourses, Secs. 330, 342.)

In *Belknap* v. *Trimble,* 3 Paige Ch. 605, it is held that the use and mode of using water must not be varied to the prejudice of others. (See, also, *Platt* v. *Johnson,* 15 Johns. 217; *Thomas* v. *Brackney,* 17 Barb. 657; *Stiles* v. *Hooper,* 7 Cow. 267; *Russell* v. *Scott,* 9 Cow. 279; *Simmons* v. *Tilston,* 7 Pick. 203; *Robinson* v. *New York and Erie Railroad Company,* 27 Barb. 522.)

Such are but a few of the many cases in which this principle has been recognized and applied, and its applicability to this State and to the peculiar tenure by which water rights are here held, was asserted in *Hill* v. *Smith,* 27 Cal. 482, with marked emphasis. (See, also, *Ramsay* v. *Chandler,* 3 Cal. 93; *Sims* v. *Smith,* 7 Cal. 150; *O'Keefe* v. *Cunningham,* 9 Cal. 591; *Jones* v. *Jackson,* 9 Cal. 244.)

A party may change the point of diversion of water into his ditch, but not to the prejudice of others. (*Kidd* v. *Laird,* 15 Cal. 180.) Such change may be made, but not to the prejudice of *subsequent appropriators.* (*Butte T. M. Co.* v. *Morgan,* 19 Cal. 616.)

*A. C. Niles,* for Respondent.

We propose to discuss the general principle announced in the instructions given at plaintiff's request, viz: That a

party who first appropriates and diverts the water of a stream for mining purposes, thereby acquires the right to construct such works as are necessary to divert and use such water; and if damage results thereby to mining claims subsequently located, it is *damnum absque injuria.*

We shall certainly not take issue with appellants' counsel upon the validity of the maxim, *sic utere tuo ut alienum non lædas*; but they have evidently mistaken the true meaning of the maxim. There is no rule of law or legal maxim which requires a person to so use his property as not to damage the property of another. The word *lædas* imports more than *damage;* it imports *injury.* (Notes to *Ashby* v. *White*, 1 Smith's Lead. Cas. 361.)

Undoubtedly we have no right to raise our dam so as to injure the mining claims of defendants. But injury means damage accompanied by wrong, as resulting from careless-ness, negligence, etc. The words are sometimes used indis-criminately by the Courts, but never when the distinction is required to be drawn. That the raise of the dam resulted in damage to defendants' claims, we of course admit for the purposes of the argument. But the only question is, whether this result was an injury, or damage without injury.

We think the counsel for appellants have mistaken the nature of the property owned by the plaintiff, and the nature of the injuries complained of by us. In our complaint we aver the right to the use of certain waters of Shady Creek, and the interruption of that use by the defendants. The ditch and dam were mentioned only as the corporeal means by which our right to the use of the water was acquired and exercised. The only damage charged was the deprivation of the use of the water. The cutting of the dam was alleged as the means by which we were so deprived of the water. Now, what was it that we acquired by our original location and diversion of the waters of Shady Creek? It was cer-tainly not the right to use and maintain the particular dam that was first erected in 1850, or that erected at any subse-

quent date.  A dam might or might not be necessary to enable us to divert the water.  The substantial right we acquired was to divert a certain amount of the water of the stream for mining purposes, and to use the means necessary to divert it.  If any change occurs in the bed of the stream from natural causes, or otherwise, but not through any act of ours, our right to the use of the water is unimpaired.

Our right being prior to the location of defendants' claims, these claims were located, subject at all times, not to our right to the use of a dam of a particular height, but to our right to divert the water by such means as might be necessary.

We admit the binding force of the decision in *Hill* v. *Smith*, 27 Cal. 482, cited by appellants : " The reasons which constitute the groundwork of the common law upon this subject remain undisturbed." But " the conditions to which we are called to apply them are changed."   We are to apply the *reasons* of these rules to an altered condition of things— not the strict letter of the rules, which may be inapplicable. For instance, in the enforcement of this rule, the Courts of sister States, concurring with the common law, have held that a riparian proprietor has no right to entirely divert the water of a stream, but has a right only to its impetus, or use while passing over his land.   This is only a particular application of the rule under the conditions there existing.  But here the ordinary use of water in the mining region requires its absolute diverson from the stream.   Will it be contended that there is not a change in the application of the rule in this respect ?   The Court, in *Hill* v. *Smith*, say there is. Yet, while the Court rejects the Eastern application of the maxim, it, none the less, applies the reason of it to the state of things here existing.   In *Hill* v. *Smith*, this Court took notice of the well known fact that ditch owners require water for a use that necessitates its diversion from the stream, and so declare the old rule forbidding its diversion inapplicable.   The Court is just as much bound to take notice of the fact, equally as well known, that the bed of all

the streams in the mining region of this State is mining ground; that it is liable at all times to be located and worked as such, and that the inevitable result of such work is to send refuse and tailings down the stream, and fill and cover the dams and claims below. And in the application of the maxim *sic utere*, etc., to this condition of things, it is equally bound to say that a party who, by prior appropriation of a certain amount of water, has acquired a right to its use, shall not be deprived of his right by such unavoidable change in the bed of the stream. And a subsequent locator of claims above or below is also bound to take notice of this state of things. The defendants in this case well knew, when they located their claims, that the unavoidable result of their work, and of the work of others upon the stream, would be to fill the bed and force plaintiff to raise its dam, or to utterly abandon its property.

By the Court, SAWYER, J. :

This is an action to recover damages for the destruction of an addition to a dam, by means of which the waters of Shady Creek were turned into plaintiff's ditch, and to restrain defendants from tearing down any other addition that may be made. The defence is, that said addition so torn down was a nuisance to defendants' mining claim.

The plaintiff's testimony tended to show the following state of facts, viz: That plaintiff is the owner of a mining ditch cut for the purpose of conveying water from Shady Creek to French Corrall for mining and other purposes; that the right to the use of said waters of Shady Creek was acquired, and said ditch located, as early as 1850; that the water of Shady Creek was turned into said ditch by means of a dam constructed across said creek; that the original height of said dam was six feet, but that, more than five years before the commencement of this suit, plaintiff had raised it from time to time, till it had attained the height of twenty-four feet; that in the month of August, 1863, plain-

tiff added from four to six feet more to the height of said
dam; that said last addition was necessary in order to turn
any portion of the waters of said creek into said ditch, and
that this necessity was caused by the largely increased
deposits of tailings in the bed of Shady Creek, which arose
principally from mining operations conducted about two and
a half miles above said dam, and partly from mining opera-
tions conducted upon the claim of defendants, by reason of
which water and tailings were discharged into said creek,
and flowed down to, and filled up said dam.

The defendants' testimony tended to prove that in 1853
defendants and their grantors were the owners and in
possession of certain mining claims located in the bed and
on the banks of Shady Creek, about three fourths of a mile
above plaintiff's said dam; that said claims had been pos-
sessed and worked according to the mining customs from
the date of their location to the present time; that, for the
purpose of working said claims, defendants had a flume
constructed above said claims, discharging at the lower end of
their said ground; that, at the lower end of said flume, there
was, up to 1863, a fall of from five to twenty feet; that in 1863
plaintiff raised said dam between five and six feet; that the
bed of the creek was very flat, and in consequence of the
raising of said dam the tailings were thrown back upon
defendants' claims, and defendants were entirely prevented
from working the same; that said claims were valuable and
could be profitably worked before said dam was thus raised;
that the raising of the dam prevented their being worked,
and that if the height of the dam should be reduced to the
point from which it was raised in 1863, said claims could be
again worked. Also, that, since the location of defendants'
claims, a large supply of water had been brought from dis-
tant streams through other ditches and poured into Shady
Creek, above said dam and claims of plaintiff's and defend-
ants', and that by means of this additional supply of water
the amount discharged into Shady Creek was greatly in-
creased, and that the greater portion of the tailings thus

run into Shady Creek came from mines and claims far above the claims of defendants.

There was some other testimony, but the foregoing is sufficient to show the real points in contest, and illustrate the theory upon which the case was submitted to the jury. The tendency of the testimony, then, is, that the overflowing of the defendants' claims with water and tailings, upon which defendants rely to justify them in abating the last addition to plaintiff's dam as a nuisance, was occasioned by said addition of from four to six feet to the height of said dam, made in 1863; that it was necessary for plaintiff to make this addition in order to enable them to turn the waters of Shady Creek, to which they were entitled, into their ditch; and that this necessity was principally in consequence of mining done on the stream some two and a half or three miles above the dam, by reason of which a large quantity of tailings and debris were carried down and deposited in the bed of the stream above said dam, thereby filling it up.

Without particularizing the instructions given and refused, this case was distinctly submitted to the jury upon the theory, that if plaintiff acquired the prior right to divert any portion of the waters of Shady Creek by means of a dam and ditch, and the stream and dam should at any subsequent time, by reason of mining by strangers above, become filled up to such an extent as to make it necessary to raise the dam higher than it originally was, to enable the plaintiff to continue the diversion by means of its ditches, then the plaintiff is entitled to make additions to the height of the dam from time to time, as occasion requires, without limitation, and wholly irrespective of the effect of these additions upon the interests of other parties acquiring rights for mining and other purposes on the stream above, subsequent to the original appropriation of the water of the stream. We think the principle thus broadly stated wholly inadmissible. The plaintiff is undoubtedly entitled to protection to the full extent of the right acquired by virtue of its prior appropriation of the waters of Shady Creek. The plaintiff appro-

priated a portion of the waters of Shady Creek, and diverted it by means of a dam and ditch sufficient for the purpose at the time, in the natural condition of the stream as it then existed. But it does not follow, as a legal proposition, that plaintiff thereby acquired the right to raise its dam higher and higher, as occasion might require, to obviate obstructions to its use in the manner originally appropriated, occasioned by physical changes in the condition of the stream not anticipated, whether arising from natural or artificial causes. The question, what is the extent of the right originally acquired by plaintiff, to which all subsequently acquired rights must be subordinate, is one of fact for the jury. The dam, as originally constructed, was six feet high. Before any other rights had been acquired in the waters of the stream, or in the banks, or the land adjacent, the plaintiff, undoubtedly, under the customs of the country and recognized law of the land, was authorized to appropriate the waters of Shady Creek for mining purposes, and to acquire a right to construct a dam and employ other means sufficient in the condition of the stream, as it then existed, to enable it to control the waters appropriated for the uses contemplated. How far great possible physical changes might then be anticipated and provided for by extending the claim, it is not now necessary to determine. But suppose the plaintiff appropriated the waters, and constructed its ditch and dam amply sufficient, under the condition of the stream and the country as it then existed, to make it available, and acquired a right to appropriate and use said water in the manner adopted and to the extent of the appropriation, this would not prevent other parties from acquiring rights in the surplus water, or in the bed and banks of the stream, or in the adjacent lands, to any extent which should not interfere with the rights before acquired. And, when the rights of the subsequent appropriators once attach, the prior appropriator cannot encroach upon them by extending his rights beyond the first appropriation. In this case the plaintiff appropriated the waters of Shady Creek, constructed its

ditch and dam for the purpose of conveying it away for the uses contemplated, and the mode of use, so far as anything to the contrary appears by the testimony, was sufficient in the then condition of the stream, to enable the plaintiff to enjoy the waters in the most advantageous manner. It does not appear that plaintiff acquired any rights, or made any claim beyond this. If plaintiff's right was thus limited to the extent and mode of the actual appropriation—and from the mere fact of appropriation and enjoyment to a certain extent, and in a particular manner, no presumption of law arises that the right is more extensive than is indicated by the actual appropriation and mode of enjoyment—then the defendants had a right to take up the mining claims on the stream above, and work them in any manner which would not encroach upon the rights of the plaintiff, as they were actually vested and enjoyed at the time of locating such mining claims. To that extent they themselves would be the first appropriators, and being first in time, would be first in right. When the right has once vested in the defendants, the plaintiff is no more justified, by extending its own claim, or changing the means of appropriation, in interfering with the full enjoyment of the right vested in the defendants, than the defendants would be, in encroaching upon the prior rights of the plaintiff. The fact only appears in evidence that plaintiff first appropriated a portion of the waters of Shady Creek at a certain point, and diverted and enjoyed them all by means of a ditch and dam of a certain height. From these facts alone, as before intimated, no legal presumption arises, that a right had at that time vested to take the water out at a point higher up the stream where a dam would flood defendants' claims, or by means of a higher dam which would affect the water at said point higher up the stream in the same manner. The legal presumption from these facts alone would rather be, that the right was no more extensive than the present enjoyment. The limitation of plaintiff's right to its actual enjoyment at the time being assumed, the defendants were authorized to take up

mining claims on the stream above, and hold and work them in the condition in which they found them, so far as they could do so without injury to the plaintiff's prior rights, and after their rights became vested the plaintiff could not rightfully construct a dam at a point further up the stream and thereby flood the defendants' claims, which were not affected by the full enjoyment of the water rights of the plaintiff, as they existed at the time of the location of said claims, nor could the same results be lawfully accomplished by erecting a dam of much greater height than the old one at the point where it was before located. The latter mode of encroachment is as clearly illegal and wrongful as the former. The defendants located their claims as early as 1853, and, so far as the testimony, or any legal inference arising from the facts which the testimony tends to prove, shows, without in any way encroaching upon the rights of plaintiff as they then existed. The claims were worked for ten years, during which time plaintiff's dam was raised from six feet—the height at which it was originally built—to the height of twenty-four feet, without in any way flooding or damaging defendants' claims. If the plaintiff did not, in fact, before the location of defendants' claims, acquire the right to erect its dam to the height to which it was finally carried in 1863, they could not afterward acquire the right as against defendants without their consent. The fact that subsequent changes occuring in the bed of the stream render it impossible to longer divert the water at the point chosen, without raising the dam, can make no difference. The question is, what was the extent of the plaintiff's right to affect the stream above by its dam at the time the defendants' claim was located. Whatever was left unappropriated at that time was open to be appropriated by defendants, and if they by first appropriation acquired the right to work their claims in their condition at that time, the plaintiff was not authorized, by erecting a higher dam, to interfere with that right. The plaintiff may have legal remedies against the parties who filled up their dam and destroyed the use of

the water right acquired, but the remedy is not by building their dam higher, and thereby destroying the rights of other parties who had located on the stream above, subject only to the right of the plaintiff, whatever it was, as it existed at the time of such location. If the defendants had the right to work their claims in the condition they were in when located in 1853, and in the manner in which they did work them, and in which they had enjoyed them for a period of ten years, then the raising of the plaintiff's dam to such a height as to throw the water and tailings back upon said claims in the manner indicated by the testimony is a violation of the maxim *sic utere tuo ut alienum non lædas,* and defendants were injured as well as damaged. The right acquired by plaintiff to take the waters of Shady Creek at the point where it was diverted by its dam did not necessarily carry with it the legal right to elevate the dam from time to time, as great physical changes in the condition of the stream might afterwards require, for all future time, without reference to other superior rights subsequently acquired. The exercise of such a right might lead to flooding a large part of the country above.

Undoubtedly, when plaintiff took up the water, and before other conflicting interests had vested, the right to the water carried with it the right to construct such works as were necessary to the full enjoyment of the water. But when it established its works, and fully appropriated the water by means sufficient for the purpose, and used it for a term of years in a particular mode, unless there was something manifesting a more extended right, other parties had a right to suppose that the plaintiff had itself defined the limits of its rights and act accordingly.

The question to be determined is, to what extent did plaintiff acquire the right to affect the banks and bed of the stream at the point where defendants' claims are located, before the location of said claims ? This point being ascer-

tained, the plaintiff is not authorized to exceed that limit, to the damage and injury of the defendants.

The case was submitted to the jury upon an erroneous theory, and for this reason the judgment must·be reversed, and a new trial had.

We have said nothing as to the effect upon the rights of the parties of the working of defendants in contributing to the filling up of the plaintiff's dam and rendering its elevation necessary, for the reason that the Court, in its charge, did not take this element into account, and no question of the kind is presented by the record. We only refer to it, because respondent's counsel have discussed that portion of the testimony in their brief; but it was not in the case upon the theory adopted by the Court in stating the law to the jury. In the second instruction the Court speaks generally of " obstructions caused by tailings coming down the stream from mining claims above;" and in the third, of " tailings coming down said stream from mining claims of other parties above said dam."

Judgment and order denying a new trial reversed and new trial granted.

Mr. Justice SANDERSON expressed no opinion.