[L. A. No. 1383.   Department One.—August 1, 1905.]

# SOUTHSIDE IMPROVEMENT COMPANY et al., Respondents, v. EDWARD BURSON et al., Appellants, and WILLIAM HORTON, Co-Defendant.

WATER-RIGHTS—APPROPRIATION BY NON-RIPARIAN OWNER—RIGHT TO SURPLUS—SUBSEQUENT APPROPRIATION.—A non-riparian owner who has by diversion and use appropriated a limited quantity of water for irrigation is limited to the amount so appropriated; and his need of surplus water for further irrigation cannot affect the intervening right of a subsequent appropriator of the surplus to take the whole thereof for other beneficial uses without his consent.

ID.—CONTRACT WITH SUBSEQUENT APPROPRIATOR—ENLARGEMENT OF DITCH—RESERVED RIGHTS—EXTENT FIXED BY DECREE.—A contract by such non-riparian owner and several riparian owners with such subsequent appropriator for an enlarged ditch contemplated to be erected on the line of the former ditch, with a reservation of present rights, does not entitle the owner to any greater quantity of water than that formerly appropriated and used, except in so far as the terms of the contract may contemplate an additional right of irrigation of lands below the line of the proposed enlarged ditch, the extent of which is fixed by the decree so far as determining rights below that line.

ID.—CHANGE OF LOCATION OF ENLARGED DITCH—HIGHER LEVEL—RIGHTS OF NON-RIPARIAN OWNER ABOVE OLD DITCH.—Where by the oral consent of the parties the line of location of the enlarged ditch was changed up the stream to a higher level, so that lands above the former ditch could be irrigated therefrom, the rights of the parties under the contract are not thereby affected; and although the non-riparian owner was entitled to change the place of use of the water originally appropriated by him, yet he is not entitled to use upon lands located between the enlarged ditch and the old ditch any greater quantity of water than that originally acquired, without reference to any enlarged rights secured to him by the written contract on lands below the line of the old ditch.

ID.—VALUABLE ORCHARDS ABOVE OLD DITCH—ESTOPPEL.—The fact that the non-riparian owner had valuable orchards between the lines of the two ditches does not estop the subsequent appropriator from assailing his rights to irrigate them under the contract.

ID.—RESERVED RIGHTS OF RIPARIAN OWNERS.—The reservation in the written contract of the "present rights" of the riparian owners includes their rights as such to the reasonable use of the water of the stream upon the whole area of their respective tracts, so far only as they could be irrigated from the higher level of the

CXLVII. Cal.—26

enlarged ditch of the subsequent appropriator of the surplus water, without pumping to lands above its level.

APPEAL—SERVICE OF NOTICE—DISMISSAL—MODIFICATION OF DECREE.—Where the rights of a party not served with the notice of appeal would not be affected by a modification of the decree made as the result of the appeal, a motion to dismiss the appeal for want of such service will be denied.

ID.—COSTS OF APPEAL.—Where such modification of the decree was not sought by the appellant, he will not be entitled to his costs.

APPEAL from a judgment of the Superior Court of Ventura County and from an order denying a new trial. B. T. Williams, Judge.

The facts are stated in the opinion of the court.

Blackstock & Orr, and John S. Chapman, for Appellants.

Barnes & Selby, and Lee & Scott, for Respondents.

SHAW, J.—The defendants, except William Horton, appeal from the judgment and from an order denying their motion for a new trial.

The plaintiffs, other than the Southside Improvement Company, are the stockholders thereof and owners of tracts of land entitled to water for irrigation from a certain water-ditch under the control of the improvement company, and the suit is brought on behalf of the plaintiffs and all other persons owning stock in the company, and as such having rights to water from said ditch, to quiet their title to the water, to determine the amount to which they are entitled, and to enjoin the defendants from diverting from the said ditch more than a certain amount of the water thereof which the plaintiffs admit they are entitled to.

The principal question arising in the case is the construction of the contract of December 18, 1886, set forth in the findings and known as the "Surdam contract," and the several rights of the respective parties under its provisions to receive water of the Santa Clara River from the ditch now controlled by the Southside Improvement Company.

When this contract was made Surdam was in possession of something over one thousand acres of land situated below that of the predecessors of the defendants, and he desired to ob-

tain a supply of water for the irrigation thereof and other uses thereon. Edwards, Guiberson, Horton, Morrison, and Swanson, the other parties to the contract, each owned or possessed a tract of land, and had been using for the irrigation thereof the water of the river, obtaining the same and conducting it to their land by means of a common dam and ditch. Edwards and Morrison each had one hundred and sixty acres, Horton and Swanson each eighty acres, and Guiberson one hundred and ninety-two acres, only seventy acres of which, however, could be irrigated from the ditch then in use. The land of Edwards was nearest to the point where the water was diverted from the river, and that of Guiberson furthest therefrom, and the latter was not contiguous to the river and had no riparian rights therein. The other tracts abutted on the stream. In pursuance of an arrangement between themselves, each had been accustomed to use the water during certain proportional parts of each week, excepting Sunday, corresponding to the interest which he appears to have claimed in the water, Guiberson using it for only one day of the six. The ditch at its head had a capacity to carry at least two hundred inches of flowing water under a four-inch pressure, but decreased in its course so that at its entrance upon Guiberson's land it could carry but twenty-five inches. Prior to that time the parties had posted a notice of appropriation at the point of diversion, claiming the right to one thousand inches of water to be taken from the river at that point. At the time of the posting this notice, however, the ditch was already constructed and in use, and no further works or means of diversion were constructed thereafter, nor was any change made in the dam or ditch in pursuance of the notice, and the rights of the parties, other than riparian, were therefore dependent upon the actual appropriation previously made and subsequently continued by means of the dam and ditch as originally constructed. The several tracts of land lay contiguous to each other along the line of the ditch, Edwards's being the most easterly and Guiberson's the most westerly tract. The ditch had not been constructed entirely across the land of Guiberson, but terminated at a point nine and a half chains from his westerly line.

By the "Surdam contract" the parties of the first part,— namely, Edwards, Horton, Morrison, Swanson, and Guiber-

son,—agreed that Surdam should have the right and privilege
to enlarge the ditch then owned and controlled by the first
parties, and to divert water from the river into the ditch at
its head, and increase the capacity of the ditch so that it
would carry at least one thousand inches of flowing water
under a four-inch pressure, and to extend the ditch beyond
its lower end to and upon the lands lying westerly of Gui-
berson's tract, that being the land then in possession of Sur-
dam, and for which he wished to obtain the water, and to con-
duct the water, by means of said ditch, to the said lands of
Surdam for irrigation and other uses thereon; that he should
have the right to take the water of the river by means of said
ditch at the point where it had been theretofore diverted by
the said first parties, as stated in the notice of appropriation
posted as aforesaid, which was referred to; and further, that
he should have the right to enter upon the lands of the first
parties for the purpose of working upon the ditch, keeping
the same in good condition and repair and providing water
therefor. It further declared that the first parties, and each
of them, reserved their right, then existing, to take and apply
for irrigation and domestic use, on their respective lands on
the line of the ditch, all the waters of said ditch that might
be required by them for said purposes, and that the right
given to Surdam was upon the express condition that he
should only have and use the water of the ditch after the
first parties had been supplied with all the water they re-
quired for irrigating their own land and for domestic use,
and that he was only to have the excess of water from the
ditch over the quantity required by the first parties. Surdam
promised that he would immediately take charge of the ditch
and proceed to deepen, widen, repair, and enlarge the same,
and open channels from the sloughs and the Santa Clara
River to the ditch, and make proper headgates to carry at
least a thousand inches of water under a four-inch pressure
into the ditch, when the same could be had from the river,
and that he would always keep the ditch in good and proper
condition for conveying that quantity of water, and, at his
own expense and cost, keep, construct, and maintain the ditch,
and use, appropriate, and supply said water in said water-
ditch, and all other rights and privileges given to him by the
first parties, to the best advantage of the first parties in irri-

gating their lands and for domestic use, and would only apply the water to his own use, or that of his assigns, after the first parties had been supplied with water from the ditch for their respective lands.

If the ditch at that time used by the parties to the Surdam contract had been extended, its elevation was such that the land of Surdam could not all be irrigated therefrom. Claiming to act in pursuance of the contract, Surdam proceeded to construct a dam further up the river than the one previously constructed, and to construct therefrom a new ditch at a higher level than the old one, but substantially parallel thereto, and but a short distance therefrom, until it reached the land of Guiberson, where, owing to the flat grade of the ground, it diverged a considerable distance to the south of the line of the old ditch, so that between the line of the old ditch extended to the westerly line of Guiberson's land and the line of the new ditch there were 46.70 acres of his land, which could be irrigated by gravity from the new ditch, but which could not be irrigated by gravity from the old ditch. It is the right to irrigate this tract of land which is the subject of contention between the parties.

After the completion of this ditch Guiberson sold his tract of land to Edward Burson, and the other appellants, except C. W. Edwards, claim under the said Edward Burson and Guiberson. The change made by Surdam in the location of the ditch was with the consent of all the other parties to the "Surdam contract," but this consent was not accompanied by any agreement whatever with regard to any change in the right to irrigate land or to receive water from the ditch. The first parties to the contract, however, accepted the new ditch as a compliance with the undertaking on the part of Surdam to enlarge and extend the old ditch. It must be considered, therefore, as an oral alteration of a written contract, and valid and effective as an alteration only so far as it was executed. Its effect was to substitute the line of the new ditch as the place where the ditch was to be constructed, instead of the line of the ditch existing at the time the contract was made. The land and water-rights of Surdam under the contract were afterwards transferred to the plaintiff the Southside Improvement Company, and thereafter the land was given the name "Bardsdale Tract," and was subdivided into

small tracts and sold to different persons, each of whom also received a certain number of shares of stock in the corporation, which made a proportional part of the water-right of Surdam, under the contract, appurtenant to the particular tract sold. The other plaintiffs are purchasers of particular lots in the Bardsdale tract, and, as such, stockholders in the company.

After the completion of the new ditch, Edwards, Horton, Morrison, Swanson, and Guiberson, and their successors in interest, obtained the water for use on their lands from the new ditch, and from time to time increased the amount of land cultivated and irrigated and took from the ditch a quantity of water largely in excess of the amount to which they were entitled before the execution of the Surdam contract. At the time the suit was begun, in 1898, each had been using such increased quantity of water for some years. This increase appears to have been consented to by all the interested parties so long as it was confined to the land lying below and irrigable from the old ditch prior to the change. None of the parties, except Guiberson and his successors, the Bursons, ever used the water on land above the old ditch. The Bursons, however, at the time the action was begun, had growing upon the land between the two ditches crops and trees requiring irrigation, and were irrigating the same from the new ditch, claiming the right to do so and the right to take additional water for that purpose. The lines of the two ditches through the land of appellant Edwards were so near together that no appreciable area of land lay between them. The court in its findings and decree awarded to Edwards the right to receive from the new ditch water sufficient for use upon all his land lying below that ditch, and gave a similar right to the other interested parties holding as successors of the parties of the first part in the Surdam contract, except the Bursons. The rights of the Bursons were limited by the decree so as to exclude therefrom the right to receive water from the ditch for use upon the tract of 46.70 acres lying between the two ditches. Whether or not the contract, as altered by the change in the location of the ditch, carried with it the right to irrigate all the land of Guiberson lying between the two ditches, and to take from the new ditch an additional quantity of water sufficient for that purpose, is the main question for determination.

The Guiberson tract was not riparian to the stream, and hence its right to the water and Guiberson's interest in the water-right at the time the contract was executed was a right by appropriation and use only. With respect to quantity it was limited to such amount as had been theretofore diverted and applied to beneficial uses by Guiberson upon the land; that is to say, to twenty-five inches continuous flow delivered at the land for one day in every period of seven days. (*Smith* v. *O'Hara,* 43 Cal. 371; *Barrows* v. *Fox,* 98 Cal. 63, [32 Pac. 811]; *Santa Paula W. W.* v. *Peralta,* 113 Cal. 44, [45 Pac. 168].) The surplus water of the stream was, so far as he was concerned, subject to diversion and appropriation by others, and Surdam needed no permission from Guiberson to give him the right to appropriate this surplus, but could have secured it at his own volition provided he had the means of diversion and a beneficial use to which he could apply the water. (*Smith* v. *O'Hara,* 43 Cal. 371; *Nevada Water Co.* v. *Powell,* 34 Cal. 109, [91 Am. Dec. 685]; *Davis* v. *Gale,* 32 Cal. 27, [91 Am. Dec. 554]; *McKinney* v. *Smith,* 21 Cal. 374; *Santa Paula W. W.* v. *Peralta,* 113 Cal. 44, [45 Pac. 168].) Neither the fact that he had additional land which could be irrigated from the old ditch, nor the presence of unappropriated water in the river which he might have diverted and used thereon, had the ditch been large enough to carry it, nor any claim which he might have asserted to such unappropriated water for future use on his land, could give him any right in the surplus water of the stream nor increase his interest therein beyond the quantity necessary to supply him with the twenty-five inches actually used. Hence it follows that the provision of the Surdam contract reserving to the first parties their "present right" to take and use the water of the river by means of their ditch did not give to Guiberson the right to receive through the new ditch any quantity of water in excess of the twenty-five inches for one day each week which he had previously used from the old ditch.

As to the other parties, their lands are riparian to the stream, and a reservation of their "present rights," as it is expressed in the contract, would include the right to the reasonable use of the water of the stream upon the whole area of their respective tracts, although, of course, the contract did

not bind Surdam to deliver it anywhere except in and by the new ditch, and they could not require him to deliver water to them at a higher level so as to enable them to use it on land above the ditch. There is nothing in the case that would justify the conclusion that either of the parties contemplated the pumping of water from the ditch for irrigation, or the diversion of water from the ditch otherwise than by the force of gravity, or that the contract was intended to bind Surdam to carry water in the ditch to be applied on lands to which it would not naturally flow from the ditch.

When the contract is considered in the light of the surrounding circumstances and the subsequent conduct of the parties, it is not unreasonable to conclude that it was intended to give to the first parties the right in future to use more water and irrigate a larger area of land than before. As to the land which was riparian to the stream, the reservation of the "present rights" would include the right to such future use upon all such riparian land. As to the Guiberson land, which is not riparian, the terms of the contract are sufficient to give him a right in addition to that which he reserved, and to secure him the use of more water than he had previously enjoyed. Accordingly, the court awarded a greater right to his successors, the Bursons, and the other parties have acquiesced in that part of the decree. The appellant Edwards is not aggrieved, as he is given the right to water for all of his land that can be reached from the new ditch. The Bursons have no reason to complain on this score, unless the rights given to Guiberson by the contract, in addition to those he then possessed, are greater than those awarded by the decree. The contract declares, among other things, that the rights granted to Surdam are given upon the express condition that he is only to have "the water of said ditch after the said first parties have been supplied with all the water they may require for irrigating their own lands or for domestic use." This provision clearly implies the right in the parties of the first part to take water in addition to the amount theretofore used, and to apply the same for irrigation and domestic use upon all the lands included in the designation "their own lands," although theretofore the water diverted by the respective parties may not have been sufficient for that purpose. The contention of the Bursons is, that it gives the right

to demand water sufficient for all the additional land covered by the new ditch as well as that irrigable from the old ditch. Their theory is, that when the line of the ditch was changed the effect is the same as if the new line was specifically described in the contract, and that if the contract as originally made carried the right to demand water upon and for all the lands irrigable from the old ditch, whether theretofore irrigated or not, then, after the alteration effected by the making of the new ditch, it must be construed to give the right to water for use upon all the land irrigable from the higher level of the new ditch, as well as that lying below the old ditch. This theory cannot be upheld. At the time the contract was drawn and its language chosen by the parties neither of them had in mind a ditch upon any other line than that which then existed, and which is specifically described therein as the "Edwards ditch." Nor did they contemplate the irrigation of any land above the level of that ditch. The lands to which the contract refers as the lands for the irrigation of which they were to receive water from the enlarged ditch were none other than the lands then manifestly in the minds of the parties; that is, the lands lying below the level of the ditch therein described, and upon any and every part of which they then had the right to use, and the means of conducting, the water. The change in the line by the construction of the new ditch, made, as it was, by mere tacit permission or consent, was without effect upon the other provisions of the contract. It is not shown that the parties in giving such permission took thought regarding any other term of the agreement, or reconsidered its effect in any other particular. Contracts are made for the purpose of expressing that which the parties intended. To give this contract the effect here claimed for it would be to make it declare something which the parties certainly never did intend. The court adjudged to the Bursons the right to take from the new ditch as much water as would be necessary to irrigate all of the Guiberson tract lying below the line of the old ditch, to the extent of a continuous flow of one hundred inches of water for a period of ninety-six hours every six weeks, and a like quantity for forty-six hours every four weeks. This gave them more than four times as much water as Guiberson had title to at the time the contract was made. This is, at least, as favorable to them as the terms of the con-

tract and the evidence would warrant, so far as the quantity of water they are entitled to receive is concerned.

There is, however, a right which Guiberson had at the time the contract was made, with respect to the water theretofore diverted, which is not secured to the Bursons by the decree; that is 'to say, the right to change the place of use of the water to which he had the present right at that time. This does not seem to have been urged in the court below, and the appellants in their brief do not expressly mention it, although they contend generally that they have the right by the contract to use all the water upon all the land to which it can now be carried.

Under the contract, as above construed, Guiberson possessed two distinct water-rights with different incidents and characteristics. One was the right by appropriation or prescription which he previously possessed, and which he reserved by the terms of the contract, modified thereby only to the extent that it was to be diverted and carried to his land by Surdam or his successors by means of a different dam and ditch, but otherwise the same water and the same right. The other was the additional right, gained solely by the contract, to receive from Surdam, or his successors, such water, in addition to that reserved, as should be required for a specified purpose: that is, to complete the supply necessary for irrigation of, and domestic use upon, that part of the land lying below the old ditch. The former right is subject to the rules of law applicable to prescriptive and appropriative water-rights, and the place of use may therefore be changed at the will of the owner, so long as others are not injured thereby. (*Ramelli* v. *Irish,* 96 Cal. 214, [31 Pac. 41]; *Jacob* v. *Lorenz,* 98 Cal. 332, [33 Pac. 119]; *Davis* v. *Gale,* 32 Cal. 27, [91 Am. Dec. 554]; *Hargrave* v. *Cook,* 108 Cal. 80, [41 Pac. 18]; *San Luis etc. Co.* v. *Estrada,* 117 Cal. 168, [48 Pac. 1075]; Civ. Code, sec. 1412.) The latter right is a right by contract with Surdam by which Surdam was to furnish additional water from the additional appropriation which he expected to make and did make of the surplus water of the river, or from any other source from which he could get it. Its extent and quantity is fixed by the contract alone, and cannot be enlarged or in any manner changed against the will of Surdam or his successors. As to this additional water, Surdam's con-

tract was to supply it only for use upon, and in the quantity necessary for, the lands below the old ditch. The amount is measured by the specified necessity. Neither he nor his successors can be required to furnish it upon any other land or in greater quantity. As to the original twenty-five inches held by prescriptive title, however, the Bursons had the right, if they chose, to use it upon any other land to which it could be carried by them after its delivery to them, provided no injury to others was caused by the change. This change of place of use cannot be allowed to work injury by increasing the total amount of water which the Bursons are entitled to receive, on the one hand, and, so limited, it will not, on the other hand, add to the burden of the company. The contract cannot be construed to give the right to receive sufficient water to irrigate the original seventy acres in addition to the twenty-five inches originally acquired by prescription. As above stated, Surdam's agreement was to supplement that amount only so far as should be necessary to supply the original tract with water. For these reasons the decree must be modified so far as to permit the Bursons to use the water, to which they are declared entitled, upon the land lying between the two ditches, to the extent of a continuous flow of twenty-five inches measured under a four-inch pressure for the equivalent of twenty-four hours in each week. This would amount to a continuous flow of one hundred inches for thirty-six hours every six weeks, or for twenty-four hours every four weeks, the same to be delivered to them at one place, and to be divided among them according to their interests as they may agree. As it is manifest that the appeal was not taken to secure this right, we think the modification should be made without costs to the respondents.

The appellants claim that the conduct of the parties shows that they so construed the contract as to give the right to use all or any part of the water upon all the Guiberson tract below the new ditch. We do not think this claim can be sustained. The Bursons have claimed the right to do so, and at times when water was plentiful there was usually no objection, but at other times there were objections, and the evidence is not such as to justify the court in disturbing the finding of the court below on this point. The same is true of the claim that the evidence does not sustain the finding that the plain-

tiffs are not estopped to deny the right of the Bursons to irrigate the 46.70 acres in question. They, the Bursons, have, it is true, planted valuable orchards on this land which will be injured or destroyed if deprived of water, but we cannot say that they were led to do this by any acts or statements of the plaintiffs or either of them. The evidence rather indicates that they were asserting the right to the water for this land against the known opposition of the plaintiffs. A person who makes valuable improvements upon or by the use of the property of another, in the face of opposition by the other, or with knowledge that he does not consent thereto, cannot invoke the doctrine of estoppel to protect him upon the sole ground that the other party did not prevent him from making the outlay.

The defendants were not injured by the refusal of the court to allow them to amend their answer during the trial so as to plead the estoppel as a defense. Conceding that the court in its discretion might have allowed the amendment, the necessity of it was removed by a stipulation made at the time, to the effect that the appellants might avail themselves of any estoppel that appeared in the evidence, in like manner as if it was pleaded. No evidence offered thereafter was excluded on the ground that there was no plea of estoppel, and the court made full findings on the question. The stipulation did not include Horton, but as he did not ask leave to present any such defense, the omission is immaterial. We think the findings that the cause of action is not barred by the statute of limitations, and as to the location of the line of the old ditch, are sustained by sufficient evidence. The other points made by appellants are not of sufficient importance to deserve special mention.

The respondents have moved to dismiss the appeals upon the ground that there has been no service of notice of appeal upon the defendant Horton. The modification of the decree which will be ordered will not injuriously affect the rights of Horton, and therefore it is not necessary to consider the motion. It will be denied.

It is ordered that the decree entered by the court below be modified by adding thereto a clause in the following words, to wit:—

"It is further ordered, adjudged and decreed by the court,

that the defendants E. Wright Burson, Willis Burson, John W. Burson, George W. Burson, Joseph H. Burson and Albert L. Burson, may use upon the tract of land containing 46.70 acres lying between the line of the said ditch controlled by the Southside Improvement Company, and the line herein described as the line of the ditch owned and constructed by Edwards and others, a portion of the water which they are hereinbefore adjudged to be entitled to receive, equal to a continuous flow of one hundred inches measured under a four-inch pressure, for the period of thirty-six hours every six weeks, in case they shall take said amount of water out of the allowance made to them at six weeks' intervals; or equal to a continuous flow of one hundred inches of water measured under a four-inch pressure for twenty-four hours every four weeks, in case they shall elect to take the same out of the amount allowed to them at intervals of four weeks; said quantity of water to be delivered to them at the times and places as hereinbefore provided and to be divided by them among themselves after delivery as they may agree; but the right so to use the quantity of water above mentioned shall not increase the amount of water which they are hereinbefore declared entitled to take and receive from the said ditch.''

As thus modified the judgment is affirmed without costs. The order denying the new trial is affirmed and the motion to dismiss the appeals denied.

Angellotti, J., and Van Dyke, J., concurred.