[Civ. No. 3679. Third Appellate District.—March 22, 1929.]

CHARLES E. HAND et al., Appellants, v. EL DORADO IRRIGATION DISTRICT et al., Respondents.

742

Charles L. Gilmore for Appellants.

Thomas Maul for Respondents.

THOMPSON (R. L.), J.—This is an appeal from a judgment of the superior court of El Dorado County denying a petition for a writ of mandate to require the exclusion of 517 acres of land from the El Dorado Irrigation District on the ground that the tract would not be benefited by the proposed district irrigation system for the reason that the petitioners already had access to an adequate independent supply of water for all useful and necessary irrigation purposes.

April 7, 1925, the El Dorado Irrigation District was duly organized, including within its territory petitioners' 517-acre tract of land. Subsequently the petitioners filed with the board of directors of said district their application to exclude this entire tract from the district on the grounds above mentioned. This petition was duly noticed, heard, and denied. From the order of the board of directors refusing to exclude this tract of land from the irrigation district, the petitioners sued out a writ of mandate in the superior court. Upon hearing in that court, the proceedings which were taken before the board were introduced in evidence and additional testimony was adduced. The superior court denied the writ, adopted findings and entered judgment against the petitioners. From this judgment an appeal was taken.

The appellants assert that the evidence taken before both the board and the superior court conclusively establishes the fact that they previously had access to an ample supply of water from sources other than those controlled by the proposed system of the irrigation district for all useful and necessary purposes, and that their lands would not be benefited by being included within the district, and should therefore have been excluded under the provisions of section 78 of the California Irrigation District Act of 1897, page 254, and subsequent amendments thereto; that in any event, it appeared without conflict that 287 acres of that tract were partly timber land and was all situated above the

highest available water supply of said district and could in no way receive a benefit from said irrigation system and that this portion of the tract at least should have been excluded from the district. Section 78 of the California Irrigation Act provides in part:

"If, upon the hearing of any such petition . . . or if the evidence fail to sustain said petition, or if the board deem it not for the best interest of the district that the lands, or some portion thereof, mentioned in the petition, should be excluded from the district, the board shall order that said petition be denied as to such lands; but if the said board deem it for the best interest of the district that the lands mentioned in the petition, or some portion thereof, be excluded from the district . . . then it shall be the duty of the board to . . . make an order that the lands mentioned and described in the petition, or *some defined portion thereof,* be excluded from said district; provided, that (the lands so excluded must consist of property) . . . which cannot be irrigated from, or which are not susceptible to, irrigation from a common source or by the same system of works with the other lands of said district, or from the source selected, chosen, or provided, or the system adopted for the irrigation of the lands in said district, *or which are already irrigated, or entitled to be irrigated, from another source* or by another system of irrigation works."

The independent sources of water supply which the petitioners contend they possess and which they assert were ample to irrigate their 517-acre tract of land consists of (1) fifty miner's inches of water per day acquired by contract from the El Dorado Deep Gravel Mining Company accessible "from the first day of December to the first day of June each and every year . . . to be used . . . *for mining purposes only;* . . . When said party of the second part . . . has no use for said water for said mining purposes upon said lands, the same shall belong to said party of the first part and flow down in its canal"; (2) Eight additional miner's inches of water derived from the same source, to be used the year round for any and all purposes; (3) An uncertain quantity of water to which appellants claim title as determined on appeal from a judgment in their favor (*Hand* v. *Cleese,* 202 Cal. 36 [258 Pac. 1090], and, (4) An indefinite

amount of water which flows from certain springs situated on the premises in question.

The respondent concedes that appellants have access to eight miner's inches of water, independent of the irrigation district system, subject to use for any purpose, at all times, on any portion of the premises. But the evidence shows this quantity of water was adequate to irrigate not more than 25 acres of land. Mr. Wildman testified that it was sufficient to irrigate only fifteen acres of land. The respondents also concede that appellants have access to fifty additional miner's inches of water, from sources independent of the irrigation district system, from December 1st to June 1st of each year, to be used for mining purposes only. The contract for this quantity of water clearly so limits the use of this source of supply. It would appear, however, that this last-mentioned water supply would be of little benefit to appellants for agricultural purposes for the reason that its use was limited strictly to mining purposes. Even for this purpose its use was restricted to the winter and spring months, during which irrigation was unnecessary. Mr. Wildman testified that: "Irrigation season is from the middle of May to the middle of September." ■ Water rights which are acquired by contract are governed by the terms of the agreement solely, and may not be enlarged or changed except by mutual consent. (26 Cal. Jur. 238, sec. 444; *Southside Imp. Co.* v. *Burson,* 147 Cal. 401 [81 Pac. 1107].) ■ Appellant's contention that this fifty-inch supply of water might first be employed for mining purposes and then stored for use for irrigation during the summer months is unreasonable. There is no evidence of the existence or prospect of any mining enterprise connected with said premises for which they could utilize this water. There is no evidence of the existence of reservoirs or apparatus suitable for storing water or of an intention on the part of appellants to construct such receptacles. The possibility of such future use is contrary to the clear meaning of the contract and is highly speculative and remote. ■ Section 78 of the California Irrigation District Act does not contemplate the exclusion of land merely because the owner may have a plan for acquiring a future independent means of irrigation. Lands may be excluded "which are *already* irrigated, or (now) entitled to be irrigated from another

source." The act should, of course, have a reasonable construction. If the owner possessed water rights which he was entitled to resort to for irrigation purposes, and the evidence showed that he proposed to construct a storage plant or other apparatus within a reasonable period of time with which to utilize the water, that might be sufficient evidence upon which to support an order of the board excluding the lands. But the record in the present case with respect to the appellant's right to the use of the fifty-inch supply of water for mining purposes certainly will not justify an interference by mandate with the board's discretion in refusing to exclude the land.

While there is some testimony of the existence of springs from which some land may be irrigated, there is no satisfactory evidence of either the quantity of water which may be so supplied, or the particular locality or area of the land which the appellants claim these springs will irrigate. Mr. Hand testified: "There are several springs . . . quite a head of water comes out down below the barn on the frontage. . . . We have always figured that there is ample water there to irrigate the property in the front. . . . I don't know the exact acreage. It runs from 60 to 80 acres. . . . (These springs) are located in several places on the land." This is too indefinite as to the quantity of water which is accessible or the location of the land so claimed to have been supplied with water to warrant an interference with the order of the board.

The appellants strongly rely upon the case of *Hand* v. *Cleese, supra*, affirming a judgment in their favor by the terms of which they claim title to thirty-one and one-half miner's inches of water flowing from "Johnson's North Canyon" through a ditch upon their lands. Assuming it to be a fact, without deciding the question, that the decision in the case of *Hand* v. *Cleese* is controlling in this proceeding, it still leaves in grave doubt the question as to the quantity of water secured to these appellants thereby. In what appears to be a recital of the findings of the trial court, which may be assumed to have been approved, since the judgment was affirmed, it is said: "The capacity of said ditch as constructed by the said Johnson was in excess of 100 inches of water measured under a four-inch pressure. The capacity of said ditch *at the present time* is 63 inches

of water measured as aforesaid." Obviously, a ditch may have a capacity or capability of holding sixty-three or one-hundred inches of water and still be empty. It will be observed that the trial court finally found that "the capacity of said ditch *at the present time* is 63 inches of water." There is no way of determining what season "the present time" referred to. It may have been the flood time of winter, or it may have been the period of time during the drought of summer. All that we find regarding the actual quantity of water to be found in this ditch is in the preliminary recitation of facts, wherein it is said: "Said ditch . . . now used to convey a portion of the waters flowing in said Johnson's North Canyon, said canyon (not the ditch) . . . having therein and flowing at the head of said ditch a stream of natural water varying in quantity according to the season of the year from 12 inches, miner's measurement, during the summer and fall to a larger quantity at other seasons of the year." It will thus appear that the maximum quantity which this ditch actually carried in the irrigation season was twelve inches of water. Nowhere in the court's findings or in the opinion of the court is a definite quantity of water found to have actually existed in this "Johnson's ditch." However, the court does find that the plaintiff in that case, who was one of the appellants in this case, is entitled to "divert and use" one-half of sixty-three inches of water "flowing therein at the head or intake of said Johnson's ditch." This language hardly furnishes satisfactory evidence that the ditch actually contained thirty-one and one-half inches of water during the irrigation season, to which the appellants were entitled to resort. Even though it might warrant this inference it cannot be said that this amount of water, plus the additional eight inches heretofore referred to, is ample upon which this court may be warranted in interfering with the discretion of the board in refusing to exclude the entire tract of land.

Finally, the appellants contend that even though the board may have been justified in including within the district a portion of the irrigable land of this tract, the undisputed evidence discloses the fact that more than one-half of the 517-acre tract, or 287 acres thereof, is nonirrigable land, for the reason that it lies above the highest available water supply of the irrigation district. In seek-

ing to exclude land from an irrigation district the burden is upon the petitioner to show by a fair preponderance of the evidence that his land will not be benefited by the proposed irrigation system or that it has other ample water supply which is available. ■ The question as to whether a portion of the land will be benefited by an irrigation system is essentially one of fact. (*Fallbrook Irr. Dist.* v. *Bradley* 164 U. S. 112 [41 L. Ed. 369, 17 Sup. Ct. Rep. 56, see, also, Rose's U. S. Notes].) ■ In the present case there is no showing as to whether the irrigation district is able, or whether it proposes to construct other ditches, reservoirs or a pumping system by means of which this upper portion of the tract may be irrigated. But assuming that the 287 acres are not susceptible of irrigation, neither the petition nor the evidence furnishes any description or method by which a court is able to segregate or distinguish this upper portion from the entire tract. It is apparent that if the upper 287 acres of land is not in fact benefited by the irrigation district and can reasonably be segregated from the tract sought to be excluded, in justice this should be done. But the record furnishes no description by which the board or a court can do this. ■ Section 78 of the California Irrigation Act specifically provides that upon a proper showing the board may exclude "the lands, or some portion thereof mentioned in the petition." Again, it is provided in that section that the board under such circumstances "shall (exclude) the lands mentioned and described in the petition, or some *defined* portion thereof." This language infers, and reason prompts the conclusion, that if a substantial proportion of the tract sought to be excluded is properly included in the district, the entire tract must be included unless the portion which is not benefited can be reasonably defined and segregated from the tract. *J. & W. C. Shull, Inc.,* v. *Merced Irr. Dist.,* 90 Cal. App. 270 [265 Pac. 965], determines this very question adversely to the appellants in this case.

■ Where the legislature has delegated to a board of directors of an irrigation district the power to hear and determine the merits of an application on the part of land owners within the district to exclude certain property, the inquiry is in its nature local to the district, and the functions of the board in such matters are *quasi* judicial. (*Im-*

*perial Water Co.* v. *Supervisors,* 162 Cal. 17 [120 Pac. 780]; *Suckow* v. *Alderson,* 182 Cal. 247, 250 [187 Pac. 965].) ▉ A reasonable exercise of the discretion which is conferred upon the board except in an absence of substantial evidence to support its conclusions, or for an abuse of such discretion, will not be interfered with by mandate. (16 Cal. Jur. 814, sec. 31; 26 Cal. Jur. 360, sec. 573; *Harelson* v. *South San Joaquin Irr. Dist.,* 20 Cal. App. 324, 334 [128 Pac. 1010]; *Inglin* v. *Hoppin,* 156 Cal. 483 [105 Pac. 582].) In *J. & W. C. Shull, Inc.,* v. *Merced Irr. Dist., supra,* it is said: "The plaintiff has apparently taken the position that the court has the same right to pass upon the evidence introduced before the board of directors . . . as the law vests in the board. . . . The law is well established that a writ of mandate cannot be made to serve the purpose of a writ of error. In this proceeding we have only to consider the question of law, not the questions of fact." (16 Cal. Jur. 822, sec. 35.)

In 26 Cal. Jur. 360 it is said: "The inclusion of lands within an irrigation district constitutes a determination by the board of supervisors that such lands will be benefited by the proposed irrigation. Since the question of benefits is one of fact, a finding with reference thereto, if supported by competent evidence, is conclusive, though erroneous. . . . However, if a finding is based upon no evidence, or is contrary to all the evidence before the board, it is subject to review."

In the present case, since it cannot be said as a matter of law that the appellants' land is not benefited by the irrigation system, and since the evidence as to whether it was previously adequately supplied with water is conflicting as to a part of the tract, and as to the remainder there is no description which will enable this court to segregate it with any degree of accuracy, it becomes necessary to affirm the judgment.

The judgment is, accordingly, affirmed.

Finch, P. J., and Plummer, J., concurred.